## CONTRACT CARTAGE CO v KERN

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 15, 1935

Barnum, Hammond, Stephens & Hoyt, Youngstown, for plaintiff in error.

H. H. Hull, Youngstown, and J. W. Peters, Youngstown, for defendant in error.

## OPINION

### By CARTER, J.

Complaint is first made that the verdict and judgment heretofore rendered is contrary to and against the greater and decided weight of the evidence and is not sustained by sufficient evidence and is contrary to law. We will later on dispose of this claimed error. The second error of which complaint is made is that the court erred in rejecting evidence tendered by the defendant. In the trial of the case plaintiff was under cross examination and counsel for defendant attempted to use what is known in the case as defendant's Exhibit No. 1, which appears to be a photograph of the trailer in question, in order, as he claimed, to identify certain lights located upon the front of the cab. The court refused to permit the photograph to be used. The defendant then offered in evidence defendant's Exhibits 1, 2, 3, 4 and 5, each of these exhibits being photographs of the tractor and trailer loaded with cars. The trailer involved in this accident was at the time of the collision unloaded; that is, there were no cars upon the trailer at the time the accident occurred. We are at a loss to understand why the defendant below did not secure photographs of the trailer unloaded. Again, the construction of this tractor and trailer were gone into thoroughly before the jury, and we conclude there was no prejudicial error in the refusal of the court to permit such to be introduced as evidence.

The next error of which complaint is made is that the court erred in admitting

evidence highly prejudicial to the defendant. Dr. Marinelli was called as a witness on behalf of plaintiff, and testified as follows:

"Q. Have you ever attended in a professional way the plaintiff in this case, Joseph Kern?
A. I have.
Q. And when did you first attend him, Doctor?
A. How's that?
Q. When did you first attend him?
A. April 28th, 1934."

The accident occurred on April 6th, 1934.
"Q. Do you recall whether it was at his home or at your office?
A. At my office."

Questions were then propounded to the witness as to what plaintiff told him relative to the history of the case and also as to certain complaints made by the plaintiff at the time. Objection was made by the defendant, overruled and the witness was permitted to testify as to subjective symptoms.

"Q. What, if any, treatments did you prescribe for him?
A. I prescribed no treatment.
Q. Did you strap him or anything like that?
A. I did not.
Q. Did you examine him last night?
A. I did.
Q. What did you find last night?

MR. YOUNG: (Attorney for defendant) Just a moment. Before he proceeds with this, Your Honor, I move to strike out all of those answers up to this point. It is evident from what the plaintiff testified to yesterday and today, this plaintiff didn't see this doctor for medical treatment.
MR. HULL: I beg your pardon. The doctor himself said so and the pla'ntiff himself said so. The mere fact the doctor didn't prescribe,—I might go to a doctor with a complaint and I go to see him as my physician, what I say to him is competent even though the doctor does not see fit to prescribe for me.
MR. YOUNG: Exception.

"Q. I believe you said, Doctor, you did examine him last night?
A. I saw him last night.
Q. You saw him last night?
A. Yes.
Q. Did you make an examination?

A. No examination.
Q. No examination?
A. No examination.
Q. I asked you what was your reason for not prescribing for him?
A. I was called in, or in fact I was called up to examine this fellow, not to treat him, to examine him.

MR. YOUNG: Now, Your Honor, I renew my objection.
COURT: At what time, last night or previously?
A. April 28th, 1934, I was called in to examine him.
Q. Then, as I understand you, Doctor, you were not consulted as a physician for treatment but for an examination?
A. For an examination.
MR. HULL: Then I quite agree with Mr. Young's contention that what the plaintiff said to him is incompetent.
COURT: It may be stricken out.
MR. YOUNG: I move to withdraw a juror and continue the cause.
MR. HULL: I object to that.
COURT: Overruled.
MR. YOUNG: Exception."

It appears that according to the testimony of the doctor himself he was called in on April 28th, 1934, to examine the plaintiff, and not for the purpose of treatment. When this was discovered by the court the court ordered the testimony of the doctor stricken out. Portions of these answers by the doctor were competent, as many of the answers referred to objective symptoms, and it is somewhat difficult to determine from the record whether the court struck out all of the testimony of the doctor, or that relating to subjective symptoms only. Now, the rule seems to be well established in this state that a doctor, called for the purpose of examination of a litigant, in order to testify and not for treatment, can not testify as to subjective symptoms, but only as to objective symptoms, and as the doctor was called to examine the plaintiff in this case in order to testify, he was not a competent witness to testify as to what the patient told him. Such would be unquestionably erroneous, and counsel for plaintiff so concedes.

Now, the testimony of the doctor was somewhat ambiguous when he testified in the first instance that he had attended the plaintiff in a professional way on April 28th, 1934, and the court, without doubt, assumed that the doctor was called for treatment. At this point it would have been proper for counsel, on application to the

court, or the court sua sponte, to have made inquiry as to the capacity in which he was called on April 28th, 1934, and the whole question of competency could have been determined at that time. We can see no prejudicial error in the admission of this testimony, in the light of the fact that the jury could have very easily inferred that the entire testimony of the doctor should be ignored, and further, the court struck out this testimony. The court overruled the motion for a withdrawal of a juror and a continuance of the case. Such a motion is directed to the sound discretion of the court, and we can not say there was an abuse of discretion on the part of the court in overruling this motion.

The next error of which complaint is made is that the verdict was rendered through passion and prejudice. Disposition of this claimed error will be made in disposing of the error that the verdict is contrary to the manifest weight of the evidence.

The next error of which complaint is made is for failure of the court to withdraw a juror and continue the case when plaintiff's counsel, during cross examination of a defense witness, made an inquiry concerning insurance. While counsel for plaintiff was cross-examining Dr. Myers, one of defendant's witnesses, the following question was propounded:

"Q. You do testify a lot, don't you, in these cases for insur—for various defendants?

MR. YOUNG: I object, Your Honor, and ask that a juror be withdrawn and the cause continued.

MR. HULL: The jury never heard the word uttered.

Q. You do testify for a lot of defendants?

MR. YOUNG: Objection.

COURT: What's the objection?

MR. HULL: Well, I wouldn't want to repeat it because that would be a ground. I will whisper it to you.

MR. YOUNG: I object to the remark.

COURT: What's the objection?

(Both sides conferred with the court).

COURT: (To the Reporter alone) Let the record show that the court got the word not completed. The word "i-n-s-u-r-" was the part that counsel pronounced but not completed, and then immediately threw the subject to some other matters. Overruled with your exceptions."

The injection of the question of insurance into the trial of personal injury cases where an insurance company is involved has been a subject of prolific discussion and variety of opinions by the courts throughout the state. The latest case of which we have knowledge is the case of Vega, Admr. v Evans, 128 Oh St, 535. The third paragraph of the syllabus is as follows:

"It is error to permit the examination of a prospective juror on his voir dire as to his connection with, interest in or relationship to any liability insurance company as such, unless insurance company is party to the litigation or unless it has theretofore been disclosed to the court by such company, or by the defense, that such insurance company is actively and directly interested in the litigation."

It is true that this deals with the examination of a prospective juror on his voir dire. However, the bringing to the attention of the jurors trying the case the fact that the defendant was probably insured would have a deeper effect on the minds of the jurors actually trying the case than prospective jurors only.

Now, it is claimed that there was no prejudicial error in this, in that it is very doubtful whether the jury knew that the word started and not completed was "insure" or "insured," and that even had the word been completed the mere fact that he was asked whether he testified for insurance companies and other defendants would be no proof or indication that an insurance company was involved in the case on trial, and that the record does not show where counsel was standing when the question was asked, whether it was spoken in a loud voice or whether the jury did or likely did hear it. We can hardly assume that the jurors did not hear this inquiry. Under this inquiry the jury could quite reasonably assume that there was an insurance company involved.

The court passing on the Vega case used this language:

"A sound public economy and the administration of justice requires a strict adherence to the issues between the primary parties without regard to the existence of any indemnity contract. Liability insurance is written to indemnify the assured against legal liability only. The injection of the insurance company into the case by innuendo creates the assumption on the part of jurors that the insurance company has been paid to indemnify the injured plaintiff for his loss and that it is attempting to escape such liability. The objectionable voir dire examination draws

the obligation of the insurance company into the case without giving the company a chance to explain the exact extent and nature of such obligation."

We believe it was prejudicial error in injecting the question of insurance into this case.

The next complaint is that the court erred in charging the jury on rules of the Public Utilities Commission not applicable to the case and highly prejudicial to the defendant, and it is claimed that Rule 18, which was given to the jury in the charge of the court, was not pled, and that there was no testimony that defendant's equipment was stopped; that the only testimony is that the equipment was being at the time backed into the parking lot, and that he stopped the equipment only when he discovered the fact that there was going to be a collision between the car being operated by the plaintiff and the trailer.

The court charged as follows:

"Under one of the rules of the Public Utilities Commission of Ohio, Rule 16, 'When it is necessary to stop a motor vehicle within the traveled portion of the highway, the driver must immediately ascertain that the vehicle is properly lighted and he must place approximately one hundred yards to the front and rear on the traveled portion of the highway, fuses, flares and other warning lights at night, and red flags in the day time.' That is a rule and regulation of the Public Utilities Commission of the State of Ohio, which has the force and effect of statutory regulaions and courts take judicial notice of the rules and regulations of the Utilities Commission of Ohio."

The court further stated:
"Now, what did this defendant do, through its agent and servant, at that time and place? Was the vehicle stopped at that time and place, or was it moving? If it was a moving vehicle, of course this regulation would not apply."

Now, as to the claim that the rules and regulations of the Public Utilities Commission were not pled, there is an allegation in plaintiff's petition as follows:

"Third, the defendant failed to give any notice of warning to persons traveling upon said street that said tractor and trailer were standing upon said street in a dark and unlighted condition."

We believe that this allegation is sufficient to draw into the case the rules and regulations of the Public Utilities Commission, but were these regulations applicable to the case at bar? There can be no doubt but that the driver of this equipment was backing same into this parking lot and same was not standing upon the street, as contemplated by these rules and regulations. These regulations provide:

"When it is necessary to stop a motor vehicle within the traveled portion of the highway, the driver must immediately ascertain that the vehicle is properly lighted and he must place approximately one hundred yards to the front and rear on the traveled portion of the highway, fuses, flares and other warning lights at night, and red flags in the day time."

We can not concur in the claim of plaintiff in this case that the situation presented called for the application of these regulations. If not, then the charge was merely an abstract proposition of law, not applicable to the issues or evidence, and we are called upon to determine whether the giving of such was prejudicial. It is the view of this court that the jury might have been misled by this instruction. We believe it was prejudicial error in giving this instruction.

It is claimed that there was error on the part of the court, prejudicial to the defendant, in allowing plaintiff's counsel to read law from an Appellate Report during final argument to the jury. During the final argument to the jury, and over the objection of the defendant, plaintiff's counsel read the following from the case of Wills v The Anchor Cartage & Storage Co., found in 26 Oh Ap, page 66 (6 Abs 155):

"Now. what was the duty of the owners of these trucks when a situation like the one outlined occurred, assuming they were guilty of no negligence in their respective trucks being caught as they were? Manifestly there was a blocking of the road. Manifestly the vehicular traffic along the road would not know of that blocking, and it would not be anticipated until a vehicle got practically upon the obstruction. Now it seems to us that the duty that was imposed upon the owners of these trucks was to display a warning light on both sides of this obstruction in such a manner that oncoming automobile traffic might be warned of the impending danger."

The facts upon which the above observation was made were in no way similar to

the case at bar. That case involved an injury to a passenger occurring in the country at the bottom of a steep hill, in which event one coming over the hill would not be advised of the presence of obstructions until in close proximity thereto. Now, there is authority to the effect that it is permissible to allow counsel in argument to read from law books and law reports. See **Ohio Jurisprudence, Vol. 39, page 711.** However, we do not concur in the permitting of the reading of reports such as the one in question where such would no doubt be misleading to the jury. We believe that the reading from this report, in which the circumstances were so widely divergent, was misleading and prejudicial.

The next error of which complaint is made is in the charge of the court. The court charged §6310-27 GC, which is as follows:

"No vehicle shall stop on any road or highway except with front and rear wheels within one foot of the right hand side of the road, nor in any such way as to obstruct free passage of the road, provided that nothing in this section shall be held to apply when a driver of a vehicle is compelled or permitted to stop by reason of other lawful regulations or emergency."

Now, this statute deals with the stopping of cars upon the highway and has no application when a car is turning or backing into a parking space, which was the situation in the case at bar, as from the evidence before us we are satisfied that this driver was attempting and was backing into the parking place at the time, and stopped only when it was apparent the plaintiff was going to collide with the trailer. This statute was not applicable to the issues involved.

Lastly, that the court erred in failing to direct a verdict for defendant at the conclusion of plaintiff's evidence and at the conclusion of all the evidence, and that the verdict and judgment is contrary to and against the greater and decided weight of the evidence and contrary to law. We have examined this record with this complaint in view and we are satisfied that the situation as disclosed by the record presents questions of fact for the jury under proper instructions, and therefore the defendant is not entitled to final judgment in this court.

It is the conclusion of the court that sufficient errors, prejudicial to the rights of the defendant, intervened on the trial of this case, as hereinbefore indicated, and coming to that conclusion the lower court is reversed and the cause remanded to the Court of Common Pleas for further proceedings according to law.

Judgment reversed.

ROBERTS and NICHOLS, JJ, concur.