## KERN v CONTRACT CARTAGE CO

Ohio Appeals, 7th Dist, Mahoning Co

No 2328. Decided Dec 2, 1936

Harold H. Hull, Youngstown, for appellee.
Barnum, Hammond, Stephens & Hoyt, Youngstown, for appellant.

## OPINION

By NICHOLS, J.

Joseph Kern instituted his action in the Court of Common Pleas of Mahoning County against Contract Cartage Company praying damages for personal injuries alleged to have been received when the automobile driven by him upon Wick Avenue, one of the main streets of the city of Youngstown, ran into the left side of the equipment which that company had been using for the purpose of transporting automobiles and which the operator thereof was at the time engaged in backing into a parking lot on the east side of Wick Avenue. This equipment consisted of a tractor which furnished the motor power and the trailer upon which the automobiles were carried. The equipment at the time of the collision extended completely across the street at an angle of about 45 degrees, the rear of the trailer portion thereof being up over the sidewalk on the east side of the avenue.

Upon the first trial of this case in the Common Pleas Court, the plaintiff obtained a judgment against the defendant in the sum of $2100.00, which judgment was reversed by this court for errors of law occurring at the trial, and the cause remanded to the Common Pleas Court for further proceedings according to law. See 20 Abs 152.

In the former error proceeding in this court the Cartage Company sought not only a reversal but urged that the trial court erred in failing to direct a verdict for it upon its motion at the conclusion of all the evidence in the case and sought final judgment in this court. In passing upon this claimed error this court stated in its opinion:

"We have examined this record with this complaint in view, and we are satisfied that

the situation as disclosed by the record presents questions of fact for the jury under proper instructions, and therefore the defendant is not entitled to final judgment in this court."

The Cartage Company, not being satisfied with the reversal of the judgment against it, but feeling it was entitled to final judgment in its favor, files its motion in the Supreme Court of Ohio, praying that court to certify the record of the Court of Appeals, but the motion to certify was overruled by the Supreme Court.

The case coming on again for trial in the Common Pleas Court, resulted in a verdict in favor of the plaintiff for $10,000. On motion of defendant for a new trial, the Common Pleas Court ordered a remittitur of $5,000, which was accepted by the plaintiff, and thereupon the motion for a new trial, as well as a motion of the defendant for judgment non obstante veredicto, were overruled and judgment entered for plaintiff in the sum of $5,000. Appeal of law is prosecuted to this court by the defendant. The sole claim of defendant now is that the trial court erred in overruling its motions for directed verdict in its favor at the close of plaintiff's case, and at the close of all the evidence in the case, as well as in overruling its motion for judgment non obstante veredicto, and defendant asks this court to render the judgment which it claims the Common Pleas Court should have rendered upon these motions, that is, final judgment in its favor.

It is here vigorously contended by counsel for plaintiff that the former decision of this case in this court, wherein we held "that the situation as disclosed by the record presents questions of fact for the jury" establishes the law of the case and that we are now bound thereby and powerless to render final judgment for the defendant, it being claimed that the situation as disclosed in the present record is substantially as in the former record; and it is further urged that the Supreme Court, in overruling the motion to certify the record in the first case, has thereby affirmed the law of the case as set forth in our previous decision. With neither of these contentions do we agree. The doctrine of the law of the case as laid down in Gohman v City of St. Bernard, 111 Oh St 726, is expressly overruled by the Supreme Court in the recent case of N. Y. L. Ins. Co. v Hosbrook, 130 Oh St 101, from which we quote the

second and third paragraphs of the syllabus:

"2. The procedural doctrine announced in Gohman v City of St. Bernard, 111 Oh St 726, is not consonant with the principles of judicial procedure upheld by the Supreme Court of this state. The claim that an inferior court can forestall review by our state Supreme Court rests upon a doctrine which is repugnant not only to our established judicial system but also to §2, Article IV, Constitution of Ohio, which confers on the Supreme Court express authority to 'review and affirm, modify or reverse the judgment of the Court of Appeals.' (The first and second propositions of the syllabus in Gohman v City of St. Bernard, supra, overruled).

"3. Where, on a first hearing a Court of Appeals has committed prejudicial error in determining the 'law of the case' for the guidance of the trial court after remand, and, upon a later hearing adheres to such determination, this court, as the last state court of review, will disturb such former determination of the Court of Appeals and will reverse its judgment, where it results from such erroneous determination."

It seems apparent that if this court committed prejudicial error in determining the law of the case for the guidance of the lower court upon remand, and if we should now adhere to such erroneous determination, the Supreme Court, as the court of last review, would reverse the judgment resulting from such erroneous determination, provided the Supreme Court first determine the case to be one of great public or general interest on motion to certify. We do not apprehend that anyone will undertake to say that the Supreme Court by its former action in overruling the motion to certify is precluded from ordering the certification of the record of the case now under consideration by this court. In the exercise of the discretion reposed in it by the Constitution, the Supreme Court may find that the case now presents matters of such public and general interest as to warrant certification, not because our present decision is or may be erroneous, but for the firmer establishment by the court of last resort of the legal questions involved. It necessarily follows that if this court erred in its former determination as to the right of defendant to final judgment, we are not bound thereby but have the duty in furtherance of substantial justice between

the parties to now make proper determination as to the right of defendant to final judgment in its favor.

Much confusion exists as to the effect resulting from the overruling by the Supreme Court of a motion to certify the record of the Court of Appeals. It is commonly asserted that the overruling of such motion amounts to a determination by the Supreme Court that the judgment of the Court of Appeals is not erroneous. But this is not necessarily so due to the constitutional provision which makes the judgment of the Court of Appeals final except in certain cases specifically pointed out by the Constitution. By the Constitution as amended in 1912 and as now in effect, the Supreme Court is granted:

"appellate jurisdiction in all cases involving questions arising under the constitution of the United States or of this state, in cases of felony on leave first obtained, and in cases which originated in the Courts of Appeals, and such revisory jurisdiction of the proceedings of administrative officers as may be conferred by law."

It is clearly seen that the original action which Contract Cartage Company sought to have reviewed by the Supreme Court by the filing of its former motion to certify the record of this court was not one coming within any of the cases thus specifically provided for in the constitution, but the constitution also provides that:

"In cases of public or great general interest the Supreme Court may, within such limitation of time as may be prescribed by law, direct any Court of Appeals to certify its record to the Supreme Court, and may review, and affirm, modify or reverse the judgment of the Court of Appeals."

**Ohio Constitution, Art. IV, §§2 and 6.**

So that on the filing of a motion to certify, the Supreme Court must, except in the instances specially enumerated, first find that the case is one of great public or general interest before certification is authorized. If the case is not one of great public or general interest, the judgment of the Court of Appeals, although erroneous, is final and not subject to review. See the case of **The State ex Faber, Receiver v Jones et, Judges, 95 Oh St 357, at pp. 365 and 366.**

We hold that the overruling by the Supreme Court of the motion of Contract Cartage Company to certify the former record in this case does not amount to an affirmance of the former decision of this court but only amounted to the determination by the Supreme Court that the case presented was not one of great public or general interest. We can readily see that the Supreme Court may have concluded, as did this court formerly, that the question whether defendant below was entitled to final judgment might well await determination after the cause be again submitted when the court would have before it certain additional evidence which the trial court previously excluded and which we held competent, although our reversal of the former judgment was based upon other errors which we deemed clearly prejudicial.

However, there is a substantial difference in the record now before us in that, among other matters, it contains certain exhibits consisting of photographs of the tractor-trailer equipment of defendant with which plaintiff's automobile collided, and from which we think reasonable minds could not differ, but must find that the trailer portion of this equipment, being the part thereof with which plaintiff's automobile collided, was a substantial discernable object which, if he had been looking ahead, the plaintiff would have seen in time to have avoided the collision, provided his speed was no greater than would enable him to stop within the assured clear distance ahead, unless there was shown some physical condition over which plaintiff had no control which made it impossible for him to have seen the trailer in time to stop before colliding therewith.

In the former record plaintiff testified that upon the night in question the street was wet and the weather misty. Plaintiff's testimony in this respect was contraverted in the former record by what we considered was the greater weight of the evidence, but still left a contraverted question of fact for the jury. In the present record no one testifies that the street was wet or that the weather was misty, but, on the contrary, every witness who testifies upon the subject states that the street was dry and the night was clear and the street lights in the vicinity were burning, and this was not denied by plaintiff or his witnesses. In the present record, plaintiff testifies that he could see "plenty good," except when he got within ten feet of the headlights of the tractor when his vision was impaired while he traveled ten feet only. If plaintiff

did not keep a lookout ahead as he proceeded along Wick Avenue, or if his speed was such that he could not stop his automobile within the assured clear distance ahead, it can not be said that such failure to look or such failure to observe the requirement of §12603 GC, commonly called the "assured clear distance" statute did not contribute to the collision, or that reasonable minds could differ upon this proposition so as to make it necessary to submit the question of proximate cause to the jury. We have but one matter to determine here, was there any evidence in the record from which reasonable minds could differ as to whether, without his fault and because of circumstances over which he had no control, compliance by the plaintiff with the "assured clear distance" statute was rendered impossible? **Kormos v Credit Men's Co., 131 Oh St 471.**

The equipment which was being operated by the defendant at the time of the collision consisted of a tractor twenty feet long, to which was attached a trailer forty feet long—long enough to carry four separate automobiles. Prior to the collision the driver of this equipment had delivered his load of automobiles to a dealer whose place of business was nearby. It being about midnight, or a little after, the driver was unable to obtain receipt for the cars delivered until the following morning. He thereupon undertook to place his equipment in the parking lot on the east side of Wick Avenue, and for that purpose drove south on Wick Avenue to a point a short distance south of the entrance to the parking lot, the tractor being along the westerly curb of the street, and thence the driver started to back the equipment into the lot. The rear end of the trailer had been backed up over the sidewalk on the east side of the street, the tractor remaining along the westerly curb, facing south, and the equipment extending entirely across the paved portion of the street and at an angle of about 45 degrees. While in this position, the driver saw the automobile of plaintiff as it came around a bend of the street, about three and one-half blocks away, there being no traffic between the equipment and the automobile of plaintiff as it proceeded north in the direction of the trailer and about in the center of the street. When plaintiff's automobile advanced to within about one hundred feet of the trailer, the operator of the tractor stopped backing, and attempted to attract plaintiff's attention by switching his lights and extending his hand. Plaintiff testified that he saw the front lights of

the tractor and also saw a green light over in the parking lot, but did not see the trailer extending across the street until he was ten feet in front of the tractor, which would place him about thirty feet in front of the portion of the trailer with which he collided, but that he did not then have time to even put on his brakes but just braced himself and put his hand over his face because he knew he was going to hit something. Being asked why he didn't have a chance to put on his brakes, he answered, "Because of the bright lights there. I didn't see the trailer until almost on it, and I saw the frame work in front of me. I didn't have a chance to even apply a brake. * * * I just saw something on the order of where they have bridge work structure, sort of skeleton over, I just got a glimpse of the frame work and braced myself and threw one hand over my face because I knew I was going to hit something. I didn't have time to put my brakes on. * * * I was in the middle of the road. I noticed the car apparently parked and nothing on my right, and I stayed in the middle of the road, knowing I should check my speed, and when I hit the trailer I was right in the center of the road. * * * I hit it more towards the tractor part * * * to the left of its center."

"Q. Was there anything to indicate to you that there was any connection of any kind between the two white lights that you saw on the front of the car you thought parked on the west curb, and the green light to the east of the car as you proceeded north?

A. No, I have gone through there lots of nights and it is a usual parking place, and there is a restaurant south of that, they go in and eat and park and some have combination lights; green, white and red, and I noticed this and thought they left the green light on, which I thought was a car parked in the lot.

Q. Was there anything you could discern between the white lights and the green as you drove north?

A. Nothing."

Plaintiff further testified that his automobile was equipped with four wheel brakes and in good condition, "A-number-one, all that a person would need to desire;" that his headlights were equipped with 32—32 candle power lamps, properly focused and burning; that he had his bright lights on and that he could see two hundred feet ahead; that there was nothing on either

side of the street to distract his attention; that he **didn't see** any lights on the trailer, that is, the side of the trailer next to him; that the tractor lights did not blind him until he got within ten feet—"I could see plenty good"; that as he got ready to pass the tractor he could see a hand coming out of the tractor; that he didn't slow down or change his course; that at no time did he put on his brakes or retard or slow the speed of his car or change its course but kept right on in the middle of the street.

Several witnesses for the defendant testified that the trailer carried four lights on its left side; that is, the side into which plaintiff drove his car, three of these lights being red and one green. Plaintiff admits seeing the green light, but only testifies **he didn't see** the red ones. The only other witness offered by plaintiff testified that he saw the collision but that **he didn't see** any lights on the side of the trailer, but this witness refused to say there were no such red lights on the side of the trailer. Plaintiff admits seeing the lights of the tractor for a much greater distance than two hundred feet; admits that he was well acquainted with Wick Avenue, having driven past the particular location twice a day for several years, sometimes stopping at a restaurant nearby; that he knew of the location of the parking lot; knew that Wick Avenue is one of the principal streets of the city, and admits that the location of the accident was the closely built up portion of the city. Plaintiff admits that he drove his automobile at 25 miles per hour at the time of the collision and for some distance prior thereto; and that he did not at any time slacken his speed. Plaintiff thereby admitted violation of that portion of §12603 GC which provides that it shall be prima facie unlawful for any person who operates a motor vehicle in and upon the public roads and highways to drive the same at a speed exceeding twenty miles per hour in the business or closely built up portions of a municipal corporation.

The only violation of law charged in the petition against the defendant is that it violated "§12614-3 GC" in that it permitted said tractor and trailer, during the hours specified in the statute, to stand upon Wick Avenue without a light visible two hundred feet from the front of such tractor and trailer. In his own testimony plaintiff admits that the lights on the front of defendant's tractor-trailer equipment were burning and were seen by him for a much greater distance than two hundred feet, and yet the court charged the jury upon the subject of this statute. Clearly this was prejudicial to the defendant.

Sec 12614 GC is a penal statute.

Four other alleged grounds of negligence were submitted to the jury in the charge of the court, to-wit, first, that the defendant failed to give any notice or warning to persons traveling upon the street that said tractor trailer was standing upon said street in an unlighted condition. There was no evidence whatever in proof of this allegation. Second, that defendant failed to keep a lookout for other vehicles traveling north on Wick Avenue. There was no evidence whatever to sustain this allegation. Third, in failing to observe the approach of the automobile of the plaintiff in time to avoid the collision therewith. There is no evidence in the record to sustain this charge. Fourth, "in entirely blocking the movement of traffic in both directions on Wick Avenue." Since plaintiff testified that he kept in the middle of the street at all times, never swerving to the right or left, it is difficult to imagine how the fact that the equipment entirely blocked the movement of traffic in both directions on Wick Avenue could have been a proximate cause of the collision, for if the east half of the street had been clear plaintiff would still have collided with the trailer since he testified he did not see it until he was so close that he didn't have a chance to do anything, not even to put on his brakes.

Sec 6310-1, GC, among other things, provides:

"Whenever there is not sufficient light within the limits of the traveled portion of the highway to make all vehicles, persons, or substantial objects clearly visible within a distance of at least two hundred feet, the forward lights which a motor vehicle * * * is required to display, shall, when the motor vehicle is in motion, throw sufficient light ahead to show any person, vehicle or substantial object upon the roadway straight ahead of the motor vehicle for a distance of at least two hundred feet."

This is a penal statute. The requirement of this statute is such that plaintiff was required to have his motor vehicle equipped with lights to throw sufficient light ahead to (clearly) see any person, vehicle or substantial object upon the highway straight ahead for a distance of at least two hun-

dred feet. The equipment with which plaintiff collided was a "vehicle" as defined by §6290 GC. This equipment was likewise a substantial object. There is no evidence to the contrary. Plaintiff's own testimony showing the amount of damage to his automobile, and his own testimony showing the weight of the trailer to be about six tons, together with the photographs which were admitted in evidence and went to the jury, are all such evidence from which reasonable minds could not differ but must find that the trailer into which the plaintiff collided was not only a vehicle as defined by the statute, but a substantial object. There is further testimony that at the place on this equipment where plaintiff's automobile collided was a sign, 28 inches X 32 inches in size, this sign being clearly shown on the photographs admitted in evidence and bearing evidence of damage which certain of the witnesses claimed was occasioned when plaintiff's automobile collided with the equipment at that point. Plaintiff's evidence does not deny that this sign was on the equipment at the time, but is to the effect that plaintiff did not see it. It may also be noted that the photographs show that one of the red lights on this equipment is right at the point where this sign is fastened to an upright portion of the structure, witnesses having testified to its location at that point. There is evidence in the record further indicating that plaintiff's car skidded about forty feet before colliding with the trailer. Plaintiff denies this only by stating that if he didn't put on his brakes the car couldn't skid.

It further appears from the record that other witnesses who approached the scene of this collision immediately thereafter were able to and did discern the equipment across the street at a distance of more than two hundred feet.

There is evidence in this record which furnishes a probable explanation for plaintiff's failure to see the equipment of the defendant across the highway as he approached it in his automobile. Plaintiff operated a gasoline filling station on the south side of the city and at the close of business preceding the collision, he had as receipts from his business more than $200.00 in cash, an extraordinarily large amount. A friend had been visiting him at the filling station that evening. The friend had his own automobile and it was arranged between the two that the friend would follow at a reasonable distance behind plaintiff as they proceeded toward plaintiff's place of residence. The friend testified that he followed about 125 to 150 feet in the rear of plaintiff's car. Plaintiff testified, in substance, that at all times he kept his friend's automobile in view by looking into his rear vision mirror; that he never lost sight of his friend on the trip from the filling station to the scene of the collision. It thus appears that plaintiff, desiring to make sure that he would not be robbed of his money on the trip home, drove his automobile at all times in the center of the street and gave attention a great part of the time to the whereabouts of his friend's car. Thus his attention was distracted from the equipment which would otherwise have been plainly visible to him. Plaintiff does not so testify, but we can contemplate that in his anxiety for the safety of his money he thought that the lights of the tractor were being flashed on and off to get him to stop so that he could be robbed of his money. But reasonable minds could not differ but must find that this was not a condition which made it impossible for him to comply with the "assured clear distance" statute, even though plaintiff had so testified.

It is the conclusion of the majority members of this court that the plaintiff violated the provisions of §12603, GC, known as the "assured clear distance" statute, in that he was driving his automobile at a speed greater than would permit him to stop within the assured clear distance ahead, and that he thereby contributed proximately, if not wholly, to his own injuries; that there is no evidence in the record from which reasonable minds could differ upon this subject but must find that plaintiff was not prevented from complying with the provisions of §12603, GC, by reason of any fact or circumstance over which he had no control.

In the foregoing state of the record can two members of this court render final judgment for the defendant? We have examined the case of Porter, Exr. et v Lerch, 129 Oh St 47, wherein it was held, as shown in the eleventh paragraph of the syllabus, as follows:

"11. Where a Court of Common Pleas, under conflicting evidence, finds that the desertion by a wife of a husband afflicted with epilepsy constitutes gross neglect of duty and decrees a divorce to the husband upon that ground, and upon error proceedings prosecuted to the Court of Appeals by the wife, that court decides, by a concur-

502

rence of only two of the judges, that the evidence produced is insufficient in law to constitute gross neglect of duty, a weighing of the evidence is involved; and a judgment of reversal carrying such decision into effect must be the judgment of all three judges of such Court of Appeals, otherwise .it would conflict with §6 of Article IV of the Constitution of Ohio, providing: 'No judgment of a Court of Common Pleas * * *' shall be reversed except by the concurrence of all of the judges of the Court of Appeals on the weight of the evidence."

It will be noted that this paragraph of the syllabus presents a situation clearly distinguishable from the case at bar. There the evidence in the Common Pleas Court was conflicting; here there is no evidence upon which reasonable minds can differ. From a reading of the opinion in the last above cited case, it is apparent that two members of the Court of Appeals attempted to reverse a judgment of the Common Pleas Court upon the ground that the evidence was not sufficient to sustain the judgment.

In the opinion it is stated:

"If there was no evidence to sustain the findings and judgment of the Common Pleas Court, such reversal was proper; if there was some evidence in support of such finding and judgment, the reversal required the concurrence of all three members of the court."

Here we find and hold that there was no evidence in support of the findings and judgment of the Common Pleas Court. It is well settled in Ohio that if all the material facts touching the alleged negligence or contributory negligence be undisputed and admit of no rational inference but that of negli- gence, in such cases the question of negligence becomes a matter of law merely.

Cleveland C. & C. Ry. v John Crawford, Admr., 24 Oh St 631;

Cleveland C. C. & I. Ry. Co. v Elliott, 28 Oh St 341;

Penna. Co., etc. v Rathgeb, 32 Oh St 66;

The Wabash Rd. Co. v Skiles, 64 Oh St 458;

Kormos v Credit Men's Co., 131 Oh St 473;

Gumley, Admr. v Cowman, 129 Oh St 36;

Skinner v Pennsylvania Rd. Co., 127 Oh St 69.

For the reasons hereinbefore stated, and

finding that substantial justice has not been done in this case, the judgment of the Common Pleas Court is reversed and this court coming now to render the judgment which the Common Pleas Court should have rendered upon the motions of defendant for judgment in its favor and for judgment non obstante veredicto, final judgment is now entered for the defendant.

Judgment reversed and final judgment for defendant.

ROBERTS, J, concurs.

CARTER, J, dissents, for the reason that in his opinion the record presents questions of fact to be determined by the jury.