## O'CONNOR v. SEABOARD COAST LINE R.R. CO.
### No. 163022.
Circuit Court, Hillsborough County.
January 26 and October 2, 1968.

William Wagner of Wagner, Cunningham & Vaughn, Tampa, for plaintiff.

Richard W. Reeves of Allen, Dell, Frank & Trinkle, Tampa, for defendant.

ROBERT W. PATTON, Circuit Judge.

*Order on motion for summary final judgment, January 26, 1968:* The above entitled cause came on for hearing on January 4, 1968, upon the motion for summary final judgment filed by the defendant Seaboard Coast Line Railroad. There were present at said hearing William Wagner, Esq. of Wagner, Cunningham & Vaughan, attorneys for the plaintiff Nellie O'Connor, and Richard W. Reeves, Esq. of Allen, Dell, Frank & Trinkle, attorneys for the defendant Seaboard Coast Line Railroad Company.

At the hearing it was made to appear that three depositions had been previously taken by the defendant and had not yet been filed and the court permitted the filing of the depositions for the purpose of consideration of same in connection with the motion for summary final judgment. The plaintiff announced at the hearing that it had no evidence to offer in opposition to the motion.

The court heard the arguments of counsel for the parties and finds the same in substance to be as follows — In support of its motion for summary final judgment, the defendant contends that the pleadings and evidence, as contained in the depositions aforesaid, conclusively shows that the plaintiff's decedent was guilty of contributory negligence which would bar the plaintiff's claim. The plaintiff contends that the pleadings and the aforesaid evidence are not sufficient as a matter of law to entitle the defendant to a summary judgment.

After having heard the arguments of counsel and having duly considered the pleadings and evidence presented for consideration on the motion for summary final judgment, the court makes the following findings —

(a) This is an action by the plaintiff for damages for the wrongful death of her husband, which she claims occurred through the negligence of the defendant. It appears that the deceased husband of the plaintiff was operating a truck and trailer along state road 71-A and collided at a grade crossing with a train being operated by the defendant.

(b) From the available evidence it appears that the collision in question occurred at night and the plaintiff's decedent was severely injured as a result thereof. As far as can be determined from the evidence the plaintiff's decedent was driving a truck to which a trailer of some nature was attached. As far as can be determined from the evidence now before the court both the train and the truck-trailer were being operated at speeds of approximately forty miles per hour. There was a curve in the highway near the location of the railroad crossing and there was also an orange grove which obscured the engineer's view of the road in the direction from which the truck-trailer was coming, and also, presumably, obscured the railroad from the view of a person on the highway approaching the crossing from that direction.

(c) One of the depositions filed and considered by the court was that of Norman Marion Gregory, the conductor of the defendant's train. In this deposition Mr. Gregory described the truck-trailer being driven by plaintiff's decedent as a "tandem trailer" with two twin axles on the rear thereof with four tires on each side. Mr. Gregory further testified that this trailer was being pulled by

a "Diamond T tractor" which he stated he believed "had a front and rear axle." The only indication from the deposition is that Mr. Gregory's description of the truck-trailer was based upon his observation at night after the accident had occurred.

It is the contention of the defendant in its motion for summary final judgment that the depositions filed in this action show that the plaintiff's decedent violated the provisions of §317.453, Florida Statutes, and that such violation, unexplained as it now stands, raises an inference of negligence on the part of the decedent and thus establishes the defense of contributory negligence raised in the defendant's answer. The basis of this contention is that the truck-trailer operated by the decedent at the time in question constituted a "vehicle with three or more axles." The depositions filed show that the decedent did not stop at the railroad crossing in question. The defendant takes the position, for the purpose of its motion, that the truck-trailer driven by the decedent constituted a "vehicle" as defined in said statute. For proof of the number of axles, the defendant relies on the deposition of Norman Marion Gregory which has been filed in this action and the portions of that deposition material to this point are quoted, to-wit —

BY MR. REEVES:

Mr. Gregory, while at the scene of the accident there, which included the motor vehicle which was involved in the accident, did you look at the motor vehicle enough to tell me how many axles it had? — I know it was a tandem-trailer. I looked at that. That was the first thing I come to at the accident.

What is a tandem-trailer? — A two axle trailer.

What does that mean? — There's two twin axles on the rear of the trailer with four tires on each side of it.

What was pulling the trailer? — A diamond T tractor. I believe it had a rear and front axle.

Mr. Reeves: That's all.

*Redirect Examination*

BY MR. WAGNER:

Two axles on the tractor and two axles on the trailer is what you're saying, as best you remember? — Yes.

Was this a cab over or was it a truck with a hood on it? — Well, now, to look at the accident, you couldn't tell, but, later on, they said it was a long nosed truck.

It was a what? — It wasn't a cab over. It had a long nose on it.

In opposition to this contention the plaintiff argues that there is no evidence to show that the truck had three axles or that the trailer had three axles and that to sustain the defendant's con-

tention it would be necessary for the court to construe the above quoted language from §317.453 as meaning that the word "vehicle" can encompass a combination of a motor truck and a trailer. Incidentally, in this connection, it is not possible from the evidence now before the court to determine what kind of a trailer was involved nor in truth and fact to determine what kind of a truck was involved.

Chapter 317 of the Florida Statutes covers the regulation of traffic on highways and §317.011 contains definitions of words and phrases contained in that chapter. The word "vehicle" is defined therein as follows —

"Every device, in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks."

It is obvious that if the defendant's contention is to be sustained, a construction by this court of the meaning of §317.453 will be required, but it appears to this court that before proceeding to construe this provision of the statute, it should be more particularly made to appear that such a construction is necessary. In other words, it is the opinion of the court that a more certain and positive description of the truck and trailer being operated by plaintiff's decedent at the time of the accident should be required to be furnished to the court because such a description might render a construction of the aforesaid statute immaterial if it should develop that either the truck or the trailer had three or more axles in and of itself. It seems evident to the court, from the deposition of Norman Marion Gregory, that his inspection of the truck and trailer was made at night following what appears to have been a violent collision with the train and in addition thereto Mr. Gregory's statements with respect to the axles on the truck and trailer appear in places to be less than positive.

If evidence is produced establishing unequivocally that the truck had fewer than three axles and that the trailer had fewer than three axles but that in combination they had a total of three or more axles, then it will become necessary for the court to determine the meaning of the quoted portion of §317.453, either for the purpose of passing upon defendant's motion for summary final judgment, or for the purpose of trial. It has become apparent to the court that even if the construction sought by the defendant should be placed upon said section by the court, still other questions may arise relative to a summary judgment.

It is the further opinion of the court that if it is required to construe the portion of §317.453 under consideration for the purposes of this action, then counsel for the parties must be given an

opportunity either to make further arguments or to file briefs relative to such construction.

Inasmuch as the construction of the portion of the statute above mentioned will, if necessary to be made, be a matter for the court, it would not be proper at this time to either grant or deny defendant's motion for summary final judgment, but rather a ruling thereon should be postponed until it can be ascertained whether the construction of the statute in question is necessary, and if so then after such construction is made.

It is thereupon ordered —

(1) That a decision upon defendant's motion for summary final judgment be continued until such time as there has been filed in this action evidence establishing with certainty the number of axles on both the truck and the trailer being operated by plaintiff's decedent at the time of the accident, and that the defendant shall, unless otherwise hereafter ordered by this court, furnish such evidence to this court within a period of thirty days from the date of this order. If not so furnished within that period of time, then unless such period of time has hereafter been extended by order of this court, an order shall be entered denying the motion for summary final judgment.

(2) If evidence shall be filed pursuant to this order showing that neither the truck nor the trailer operated by plaintiff's decedent had more than two axles each, and further showing that the total number of axles on the truck and trailer combined consisted of at least three, then this court shall enter a further order fixing a time for arguments or briefs by counsel for the parties relative to the construction of that portion of §317.453 of the Florida Statutes involved in this action.

*Order denying summary judgment, October 2, 1968:* This cause came on again to be heard before this court on September 6th, 1968 upon the motion for summary judgment filed by the defendant on October 24th, 1967. The questions raised by this motion are set forth in the order on motion for summary judgment entered in this cause on January 26th, 1968.

Subsequent to the entry of the order last mentioned there was filed with this court an affidavit of W. W. Schaffer, Jr., together with two photographs, all of which have been made a part of the court file. The affiant states that the truck driven by plaintiff's decedent at the time of the accident in question had two axles, and that the trailer being pulled by said truck likewise had two axles.

In order for the provisions of §317.453, Florida Statutes, to be applicable to this action, in view of said affidavit, it would be

necessary for this court to construe the following words contained in said statute, to-wit —

"or any vehicle with three or more axles . . ."

as meaning any combination of vehicles having a total of three or more axles. In the opinion of the court such a construction is not justified when consideration is given as a whole to chapter 317 of the statutes. As pointed out in the order of January 26th, 1968, the defendant relies on the definition of the word "vehicle" contained in §317.011 to sustain the argument that the truck and trailer combined constituted a "vehicle" within the meaning of the quoted portion of §317.453.

In the first place, under the provisions of §317.011, subsections 57 and 58, a trailer is defined as a vehicle and a truck is defined as a motor vehicle. It would logically seem to follow that a combination of the two would constitute two vehicles. The legislature appears to have adopted this conclusion in several sections of chapter 317 wherein reference is made to "combinations of vehicles." This court has not attempted to read every section of said chapter, but the words "combination of vehicles" or "train of vehicles" or similar words are used in the following sections — 317.481; 317.532; 317.621; 317.761; 317.771 and 317.801. In this connection the language contained in §317.791 is interesting, to-wit — "When a vehicle is towing a trailer or semi-trailer on a public road . . .".

To construe §317.453 to apply to this case would require this court to determine that the legislature intended by the use of the word "any vehicle with three or more axles" to require every person towing by automobile a small boat trailer or utility trailer of the type now in common use to stop at every railroad grade crossing of a state road unless controlled by a police officer or traffic controls signals. Such an intention does not, in the opinion of this court, appear from chapter 317 when considered as a whole.

Counsel for the defendant has cited the section of *Words and Phrases* defining the word "vehicle." Among the cases cited therein is Kern v. Contract Cartage Co., 9 N. E. 2d 869, wherein the Ohio court construed the word "vehicle" to apply to a tractor and trailer, but the situation there involved was entirely different from the question now before the court.

Counsel for the defendant also renewed his argument that from the pleadings and evidence now before the court in this case, the defendant is entitled to a summary judgment on the theory that it clearly appears that the accident in question resulted either from the sole negligence of the plaintiff's decedent or as a result of his contributory negligence. As authority for this contention the de-

fendant relies on the decision of the Third District Court of Appeal in McDonald v. Atlantic Coast Line Railroad Company, 155 So.2d 625. The basis for the summary judgment entered therein by the trial court, and affirmed on appeal, appears from the following language contained in the decision of the District Court of Appeal —

> "The undisputed facts clearly show that the plaintiff was traveling at a reckless speed, especially in view of the weather conditions. Further, he should have been acquainted with the crossing since he traveled this route nightly for six months. We find that under these facts the plaintiff's negligence was so gross and flagrant as to eliminate any possibility that the defendant's negligence, if any, could have contributed to the accident."

That case was decided, of course, under the comparative negligence doctrine then in force with respect to railroad crossing accidents.

There are points of similarity between the quoted statement from the *McDonald* decision and the case now before the court, but there are, in the opinion of the court, material points of dissimilarity insofar as appears from the evidence now before the court. Briefly these are —

1. There were no adverse weather conditions here.

2. There is no evidence that plaintiff's decedent was operating his truck and trailer at a reckless speed unless such a conclusion can be reached as a result of the testimony contained in the deposition of two of the defendant's employees relative to a conversation between the brakeman and plaintiff's decedent after the accident wherein the decedent is alleged to have stated that he passed over this particular crossing seven days a week. It is to be noted that at the time of this conversation the decedent was suffering from injuries which allegedly resulted in his death. It is further clear from the depositions that the decedent felt that he was about to lose consciousness. There is no other evidence of his familiarity with the crossing.

3. In the *McDonald* case 16 cars of the train were across the crossing, although the train was going only three miles per hour. In the case now before the court the speed of the train was estimated at forty miles per hour and the truck struck the locomotive. It was also estimated that the truck was going about the same speed as the train prior to the accident.

4. In addition the evidence shows that the crossing in the case before this court was blind to some extent for both the train and motor vehicles on the highway. The engineer, Robert Ted Sanders, admits this in his deposition.

Without further evidence of the physical and mental condition of the decedent when he made the alleged statements to defendant's employees immediately following the accident, the court is of the opinion that a summary judgment should not be entered based thereon. The decedent may have been so badly injured that such statements were not reliable.

Furthermore, even assuming that the decedent may have been guilty of some negligence in the operation of his vehicle, there still remains a question of whether such negligence was the proximate cause of the collision. From the evidence now before the court, it cannot say at this time that there is a complete absence of a genuine issue on the matter of proximate cause. There are inferences deducible from the evidence now before the court that there could have been some negligence on the part of the defendant in the operation of its train. Whether such negligence, if it did exist, could have been the proximate cause of the decedent's injuries and death cannot be ascertained from the evidence now before the court. Nothing contained in this order is to be construed as any finding of negligence or contributory negligence on the part of the defendant or as to proximate cause.

For the reasons herein set forth it is ordered that the motion of the defendant for summary judgment is denied.