[Civ. No. 6827. Third Dist. Dec. 30, 1942.]

STANDARD OIL COMPANY OF CALIFORNIA (a Corporation), Respondent, v. CHARLES G. JOHNSON, as State Treasurer, etc., Appellant.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Appellant.

Pillsbury, Madison & Sutro, Sigvald Nielson and H. H. McElroy for Respondent.

ADAMS, P. J.—This appeal involves four consolidated actions brought to recover retail sales taxes imposed upon respondent for sales of fuel oil and other petroleum products and paid under protest. All of the consolidated cases involve sales to Southern Pacific Company, and one also involves sales to Western Pacific Railroad, Alaska Packers Association and Atchison, Topeka and Santa Fe Railway. The actions were filed in the Superior Court of Sacramento County February 9, 1937, and were subsequently submitted to the trial court on two stipulations of fact, the first referring to the three cases involving sales to Southern Pacific Company alone and the other to the action involving sales to Southern Pacific Company and the other three companies previously mentioned.

Briefly the facts set forth in the stipulations are as follows. Standard Oil Company, hereinafter called Standard, was and is a Delaware corporation doing business in California and engaged in the production and refining of petroleum products. Its head office was and is in San Francisco. The major portion of its petroleum products comes from sources within the State of California. Southern Pacific Company was and is a Kentucky corporation doing business in California and elsewhere. Its main railroad operating office was and is in San Francisco and its principal business was and is the operation of railroads in California, Oregon, Nevada, Arizona, Utah and elsewhere. It requires large quantities of fuel oil and as same is not produced in commercial quantities in the above mentioned states other than California it has necessarily secured its supply for use in such states from sources elsewhere. California was and is an accessible, available and convenient source of supply, although other sources of supply exist east of its terminal at Ogden, Utah, at its terminal at El Paso, Texas, and at points not on its line of railroad in New Mexico.

In January, 1928, Southern Pacific Company at San Francisco entered into a contract with Standard to furnish fuel oil for its requirements in the above named states, deliveries to be made into the tanks, tank cars, reservoirs or other receiving facilities of the railroad at designated points in California. Thereafter for its use in Oregon, Arizona, Nevada and Utah, Southern Pacific Company, through its offices in San Francisco, ordered fuel oil from respondent through its

San Francisco office. Shipping directions were that said oil should be shipped to Southern Pacific Company or to its agents or employees at the respective destinations in said states, delivery to be f.o.b. Southern Pacific Company tank cars at Tracy or El Segundo, California, whence it was transported by Southern Pacific Company to its various destinations as determined by said orders and by "way bill for company freight" issued contemporaneously with loading. When oil was needed at these various points communications were sent therefrom to Southern Pacific Company's San Francisco office which relayed same to Standard at its San Francisco office, specifying destination and consignee. After loading, the railroad company transported the oil outside of California and it was used in the operation of its roads in Oregon, Nevada, Arizona and Utah and was never diverted to any points inside of California. Payment for these purchases was made by the San Francisco office of Southern Pacific Company to respondent's office in San Francisco.

The Western Pacific Railroad Company also entered into a contract with respondent on June 2, 1933, under which the latter agreed to deliver fuel oil f.o.b. the tank cars of the railroad company at Lyoth and other points in California. Inspection was provided for at time and place of delivery. The sales involved herein were for shipment to Nevada as per waybills issued at the time of shipment.

A similar contract for petroleum products was entered into between respondent and Alaska Packers Association on December 3, 1931, under which agreement petroleum products were delivered to the ships of the association at Alameda and San Francisco, California, for use outside of California. Said oil, after being loaded on the Association's ships, was delivered to points in Alaska.

Atchison, Topeka and Santa Fe Railroad Company purchased certain greases from respondent which were delivered f.o.b. Richmond, California, and were thence transported to Arizona by said railroad company. It was stipulated that the means of transportation used in each case were the only practicable means for such transportation.

It was also stipulated as a fact that California is one of the great oil yielding states of this country; that there has grown up within its borders a vast and extensive oil industry which produces and exports petroleum products in ex-

cess of what can be consumed within the state; that oil products are being shipped continuously and constantly in tremendous quantities from California into other states and foreign countries; and that the fuel oil in controversy is a part of the oil products so shipped.

However it was agreed between the parties that in entering into stipulations as to the facts, neither party waived any legal objection to the admissibility in evidence of any of the facts stipulated, and each reserved the right to offer legal objection to any portion thereof; and the facts stated in the preceding paragraph were admitted by the trial court over the objection of defendant that such facts were incompetent, irrelevant and immaterial.

On the foregoing facts the trial court rendered judgment in favor of plaintiffs and this appeal is taken therefrom.

This case was previously before this court (*Standard Oil Co. v. Johnson*, 33 Cal.App.2d 430 [92 P.2d 470]) on appeal from a judgment for defendant entered after plaintiffs' refusal to amend their complaints to which demurrers had been sustained by the trial court. On that appeal this court held that the transactions set forth in said complaints were exempt from the provisions of section 5(a) of the California Retail Sales Tax Act. (Stats. 1933, p. 2599, Deering's Gen. Laws, Act 8493.) That decision was rendered June 19, 1939, and the judgment of the trial court was reversed. Thereafter defendant answered, and the cases were tried by the court on the stipulations of the parties as to the facts and the objections of defendant to the admissibility of certain facts as above stated. Judgment went for plaintiffs and defendant has appealed.

It is here contended by appellant that the sales and deliveries of its products by respondent as above shown constitute intrastate transactions subject to the tax imposed by the foregoing act, and that the prior decision of this court does not preclude a decision to that effect for the reasons (1) that the facts developed at the trial are different from those upon which the prior decision was rendered, (2) that since that decision controlling authorities have determined the legal issues adversely to the ruling on the original appeal, and (3) that the original decision of this court was erroneous and adherence thereto would work manifest injustice.

Respondent stands upon the "law of the case," urges that

the facts are not different and that the more recent decisions relied upon by appellant are not pertinent. It insists that the transactions in controversy are and constitute interstate commerce and are therefore exempt from the provisions of the act.

 We shall consider first the rule of the "law of the case," and whether the prior decision of this court in the same action precludes us from now considering whether the sales shown are subject to the tax.

The Supreme Court said in *England* v. *Hospital of Good Samaritan,* 14 Cal.2d 791, 795 [97 P.2d 813]:

"The doctrine of the law of the case is recognized as a harsh one (2 Cal.Jur. 947) and the modern view is that it should not be adhered to when the application of it results in a manifestly unjust decision. (*United Dredging Co.* v. *Industrial Acc. Com.,* 208 Cal. 705 [284 P. 922].) However, it is generally followed in this state. But a court is not absolutely precluded by the law of the case from reconsidering questions decided upon a former appeal. Procedure and not jurisdiction is involved. Where there are exceptional circumstances, a court which is looking to a just determination of the rights of the parties to the litigation and not merely to rules of practice, may and should decide the case without regard to what has gone before. (*Messenger* v. *Anderson,* 225 U.S. 436 [32 S.Ct. 739, 56 L.Ed 1152]; *Seagraves* v. *Wallace,* 69 F.2d 163; *McGovern* v. *Eckhart,* 200 Wis. 64 [227 N. W. 300, 67 A.L.R. 1381].)"

Also in *Gore* v. *Bingaman,* 20 Cal.2d 118, 122, 123 [124 P.2d 17], it is said:

"It is true that the law of the case doctrine is a procedural rule which is generally followed, not because the court is without power to reconsider a former determination, but because the orderly processes of judicial procedure require an end to litigation. In the absence of exceptional circumstances of hardship and injustice the need for attributing finality to considered judicial determinations compels adherence to the previous decision. But the rule should never be made the instrument of injustice. *Thus, where the controlling rules of law have been altered or clarified in the interval between the first and second appeal and adherence to the previous decision would result in defeating a just cause, it has been held that the court will not hesitate to reconsider*

*its prior determination.* (See *England* v. *Hospital of Good Samaritan,* 14 Cal.2d 791, 795 [97 P.2d 813] ; 42 Harv. L. Rev. 938.)'' (Emphasis ours.)

Other California cases have held that the law of the case is applicable, if at all, only when on subsequent hearing there is a substantial identity of facts. (*Haase* v. *Central Union H. School Dist.,* 27 Cal.App.2d 319 [80 P.2d 1044] ; *Timm* v. *McCartney,* 30 Cal.App.2d 241 [85 P.2d 920] ; *Dewees* v. *Kuntz,* 130 Cal.App. 620 [20 P.2d 733] ; *Rasmussen* v. *Fresno Traction Co.,* 15 Cal.App.2d 356 [59 P.2d 617] ; *Flood* v. *Templeton,* 152 Cal. 148 [92 P. 78, 13 L.R.A. N.S. 579].) In other jurisdictions the courts have refused to follow the rule. (*Reamer's Estate,* 331 Pa. 117 [200 A. 35, 119 A.L.R. 589] ; *Kern* v. *Contract Cartage Co.,* 55 Ohio App. 481 [9 N.E.2d 869] ; *Shell Oil* v. *Henry,* 175 Wash. 298 [27 P.2d 582] ; *New York Life Ins. Co.* v. *Hosbrook,* 130 Ohio 101 [196 N.E. 888, 118 A.L.R. 1283] ; *Davidson* v. *St. Louis etc. Ry. Co.,* 301 Mo. 79 [256 S.W. 169] ; *Wair* v. *American Car & Foundry Co.* (Mo.App.), 300 S.W. 1048; *Powell* v. *United M. & M. Co.,* 107 Okla. 170 [231 P. 307] ; *Gamble* v. *Keyes,* 49 S.D. 39 [206 N.W. 477] ; *Green* v. *Priddy,* 112 Tex. 567 [250 S.W. 656].) Also in the federal courts it has been held that the rule is not conclusive on an appellate court, especially where between the date of the former decision and the reconsideration of the case, controlling authority has determined the issues adversely. (*Johnson* v. *Cadillac Motor Car Co.,* 261 F. 878 [8 A.L.R. 1023] ; *Chase* v. *United States,* 261 F. 833; *Pacific Am. Fisheries* v. *Hoof,* 291 F. 306, cert. den. 263 U.S. 712 [44 S.Ct. 38, 68 L.Ed. 520] ; *Higgins* v. *California Prune & Apricot Grower, Inc.,* 3 F.2d 896; *Toucey* v. *New York Life Ins. Co.,* 112 F.2d 927.) Particularly is the rule inapplicable where the decision lays down a principle of law for future guidance which is unsound.

Respondent cites cases to the contrary, and urges that there has been no change in the facts and no intervening decision justifying reconsideration. Also it urges that not justice but the determination of controversies is the primary consideration of policy behind the organization of courts, and that this litigation should be brought to an end by a refusal to reconsider the legal question determined in our former opinion. We are not impressed with this argument

and believe that we should reexamine the question of law involved in our former opinion in light of the facts now before us and the subsequent decisions referred to hereinafter.

Section 5(a) of the California Retail Sales Tax Act (Stats. 1933, p. 2601) exempts from the provisions of the act receipts from sales which this state is prohibited from taxing under the Constitution or laws of the United States.

The question presented is whether the sales in question are exempt under the foregoing provision. Respondent urges that they were transactions in interstate commerce, and that the imposition of the tax would result in a discrimination against interstate commerce in violation of the Constitution of the United States. Appellant contends that the transactions were solely intrastate, and that the imposition of the tax upon the seller does not discriminate against nor impose a burden upon interstate commerce, nor constitute a regulation thereof.

*Department of Treasury* v. *Wood Preserving Corp.*, 313 U.S. 62 [61 S.Ct. 885, 85 L.Ed 1188], is relied upon by appellant, not only as a subsequent decision making inapplicable here "the law of the case," but as presenting a situation comparable to the present one. The facts of that case are that defendant, a Delaware corporation doing business in Indiana, was engaged in treating railroad ties, and also was in the business of buying and selling such ties to those with whom it had contracts for treatment. It had a contract with the Baltimore & Ohio Railroad Company to sell it raw ties to be delivered f.o.b. that company's cars on its tracks in Indiana. However, under the contract all such ties had to be shipped to Ohio for treatment by the Wood Preserving Corporation at one of its plants there located. Requisitions for ties were issued from the railroad company's office in Baltimore, Maryland, and accepted by defendant corporation at Marietta, Ohio. The latter corporation then procured ties from producers in Indiana who delivered them at loading points on the Baltimore & Ohio Railroad in Indiana. At these points the ties were inspected by representatives of the railroad company and respondent, and such as were accepted were then loaded upon the railroad company's cars for shipment to Ohio. Respondent made out bills of lading with itself as consignor and the Baltimore and Ohio's Chief Engineer at Finney, Ohio, as consignee. Respondent paid no

freight. The Indiana statute (§2 of ch. 50, Acts of 1933) imposed a tax upon gross income "derived from sources within the State of Indiana" of all persons who were not residents of the state but were engaged in business there, or who derived gross income from sources within the state. The Department of Treasury of Indiana taxed the gross receipts of the Wood Preserving Corporation from the sale of ties to the Baltimore and Ohio, and this action was brought to recover taxes paid under protest. The trial court denied recovery but its judgment was reversed by the Circuit Court of Appeals of the Seventh Circuit which held that the taxes were invalid as laid upon income received outside the state, and as constituting an unlawful burden upon interstate commerce. (*Wood Preserving Corp.* v. *Department of Treasury,* 114 F.2d 922.) The Supreme Court granted certiorari and reversed the Circuit Court of Appeals, saying that respondent received in Indiana the ties purchased from local producers and that it sold and delivered said ties to the railroad company in Indiana; that these were local transactions— sales and deliveries in Indiana—and that they were none the less intrastate activities because the ties thus sold and delivered were forthwith loaded on the railroad cars to go to Ohio for treatment; that respondent did not pay the freight, and that the circumstances that the billing was in its name as consignor was not of consequence in the light of the facts showing completed delivery to the railroad company in Indiana. (Citing *Superior Oil Co.* v. *Mississippi,* 280 U.S. 390 [50 S.Ct. 169, 74 L.Ed 504].)

The Circuit Court of Appeals for the Seventh Circuit in rendering its decision, stated that the Superior Oil case, *supra,* had little or no relevancy, and in its former opinion this court also distinguished that case. But the Supreme Court evidently found the situation there presented comparable to that presented in the Wood Preserving Corporation case; and we think it is comparable here. The Superior Oil Company did business in Mississippi and sold gasoline to packers in Biloxi which was delivered to the packers' wharves. The latter loaded it upon their own fishing boats and took it to Louisiana where they delivered it to fishermen for use in fishing. The fishermen brought their catch back to the packers in Biloxi, sold it to them and were charged with the cost of the gasoline in account. It appeared when the oil company delivered the gasoline at Biloxi it received a so-

called bill of lading signed by the master of the boat on which it was loaded showing that it was consigned to ......, destination Grants Pass, Louisiana, by boat owned or operated by the named consignee, and recited that this gasoline remained the property of the oil company until delivered to consignee or its agent at point of destination. The seller paid no freight. Regarding this document the court said that it seemed to have no other use than to try to convert a domestic transaction into one in interstate commerce, as there was no consignee at the point of destination and that the goods "were delivered to the so-called consignee before they started, and were in its hands throughout"; that there was no point of destination for delivery but merely a neighborhood in which the packers that had already bought it expected to sell it again; and that the parties could not by their form of contract convert what was exclusively a local business, subject to state control, into an interstate commerce business protected by the commerce clause—at least where the contract achieved nothing else.

In *Eastern Air Transport, Inc.* v. *South Carolina Tax Commission,* 285 U.S. 147 [52 S.Ct. 340, 76 L.Ed. 673], suit was brought to restrain the collection of a tax imposed by South Carolina on the sale of gasoline purchased in the state by the transport company and used by it in interstate commerce. The evidence showed that the company operated air transport lines across the state, made stops within it, but did not carry passengers or freight between points in the state; that practically all of its business was interstate and that it bought gasoline in South Carolina which it used in its transport planes. The court said that the tax was described in the statute as a license tax against the dealer for the privilege of carrying on the business of selling gasoline in the state; that the tax was thus imposed upon the sellers and sales in question were intrastate sales. Also that if the tax were construed to be an excise tax the distinction could not be important as the tax would be upon the general mass of property in the state and hence subject to the state's authority to tax, although the property might actually be used in interstate commerce. It said:

"There is no substantial distinction between the sale of gasoline that is used in an airplane in interstate transportation and the sale of coal for the locomotives of an interstate

carrier, . . . . A non-discriminatory tax upon local sales in such cases has never been regarded as imposing a direct burden upon interstate commerce and has no greater or different effect upon that commerce than a general property tax to which all those enjoying the protection of the State may be subjected.''

In *Department of Treasury* v. *Ingram-Richardson Mfg. Co.*, 313 U.S. 252 [61 S.Ct. 866, 85 L.Ed. 1313], decided May 5, 1941, a company in Indiana received from customers in other states stove parts and the like which it enameled in Indiana and then returned to the customers. It was held that income derived from such source was taxable in Indiana under its gross income tax act as the fruits of intrastate activities; and that the fact that orders were solicited and contracts for the work were made in other states, and the parts transported to and from Indiana by trucks of the enameling company, did not affect the situation. This transportation was said to be ''but an incident'' to the intrastate business. *Treasury of Indiana* v. *Wood Preserving Corp., supra,* was cited.

In *Superior Coal Co.* v. *Department of Finance,* 377 Ill. 282 [36 N.E.2d 354], decided June 17, 1941, sales of coal by a subsidiary corporation, a coal company, to its parent corporation, a railway company, were held not to constitute interstate transactions exempt from the provisions of the Retailers' Occupation Tax Act (Smith-Hurd Stats., c. 120, § 441) notwithstanding that coal which was mined, sold and delivered in Illinois was delivered for use outside the state, where the parent corporation obtained complete possession of the coal in cars in Illinois and took possession of it as purchaser and not as a mere bailee, and the subsidiary had no duty to ship coal beyond the boundaries of a state to complete its contract of sale; that it paid no freight.

Respondent cites and relies upon *In re Globe Varnish Co.,* 114 F.2d 916, as being exactly in point in the instant case. It was there held that where a carrier having offices and a freight station in Chicago ordered paint from an Illinois corporation requesting the seller to ship the order to the carrier care of its storekeeper at its Milwaukee shops, Wisconsin, and the seller complied with the order and delivered the paint properly consigned to the consignee at Milwaukee to the carrier's freight station, together with the standard form bill of lading, that the transaction was in interstate

commerce and was not subject to the Illinois Retailers' Occupation Tax. However that case was decided by the same Circuit Court of Appeals and by the same two judges thereof whose decision in the Wood Preserving Corporation case was reversed by the United States Supreme Court, and the reasoning in the two cases was the same. Certiorari in the Globe Varnish Company case was denied by the United States Supreme Court for want of jurisdiction and the case was therefore not reviewed on its merits. In view of the decision of the Supreme Court in the Wood Preserving Corporation case we believe that the decision in the Globe Varnish Company case is unsound.

In *Western Live Stock* v. *Bureau of Revenue,* 303 U.S. 250, 254 [58 S.Ct. 546, 82 L.Ed. 823, 827, 115 A.L.R. 944], the Supreme Court said that it was not the purpose of the commerce clause of the Constitution to relieve those engaged in interstate commerce from their just share of the state tax burden, even though it increased the cost of doing the business, where such commerce is not thereby subjected to multiple taxation not borne by local commerce.

In *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U.S. 33 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876], decided January 29, 1940, the Supreme Court said that in imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress; that it is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred upon Congress that the tax can be said to exceed constitutional limitations; that forms of taxation whose tendency is to prohibit the commerce or place it at a disadvantage as compared with intrastate commerce, and any state tax which discriminates against the commerce are familiar examples of the exercise of the state's taxing power in an unconstitutional manner because of its obvious regulatory effect upon commerce between the states; but that it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of tax burdens merely because an incidental or consequential effect of the tax is an increase in the cost of doing business. The tax under consideration in that case was held to be without possibility of such consequences. It was said not to aim at or discriminate against interstate commerce,

it was laid upon every purchaser within the state of goods for consumption regardless of whether they had been transported in interstate commerce, and its only relation to such commerce arose from the fact that immediately preceding transfer of possession to the purchaser within the state the merchandise had been transported in interstate commerce and brought to its journey's end. It was sought by counsel to make a distinction between a tax on sales made without previous contract after the merchandise had crossed the state boundary and sales the contracts for which when made contemplated or required the transportation of merchandise interstate; but the court denied the distinction and said that it had sustained the tax where the course of business and the agreement for sale plainly contemplated shipment interstate in fulfillment of a contract. As to the tax under consideration it said that its effect, even though measured by the sales price, neither discriminated against nor obstructed interstate commerce more than numerous other state taxes which had repeatedly been sustained as involving no prohibited regulation of interstate commerce.

In *O'Kane* v. *State*, 283 N.Y. 439 [28 N.E.2d 905], decided July 24, 1940, it was said that state taxes are not necessarily invalid because they result in some increase in the cost of doing interstate business; that such commerce must bear its share of the tax burden but that states must not impose a direct tax on interstate commerce "as such," and that it may not be subjected to multiple burdens to which intrastate commerce is not exposed; and it was there held that where stock brokers in New York received written confirmation of sales of stock from banks in foreign states and mailed the stock with draft attached to buyers in the foreign state after offer to purchase and memorandum of sale and agreement to sell were made in New York where the stock was located, no discrimination was practiced on interstate commerce by imposing a tax on the event of the making of the agreement for sale which occurred in New York prior to transportation of the stock in interstate commerce, and it was immaterial that the event was followed by interstate commerce.

In *Aponaug Mfg. Co.* v. *State Tax Commission*, 190 Miss. 805 [1 So.2d 763], decided April 28, 1941, a statute of Mississippi imposed a privilege tax measured by the volume of

business done, upon persons engaged in manufacturing for sale, etc., the amount of the tax being determined by gross proceeds of sales regardless of the place of sale or whether deliveries were made out of the state. The plaintiff company manufactured cotton goods in Mississippi which it sold chiefly in other states and it claimed that the tax imposed by Mississippi constituted as to its business an undue burden upon interstate commerce. The court however held to the contrary and the United States Supreme Court affirmed its judgment in a memorandum opinion (314 U.S. 577 [62 S.Ct. 131, 86 L.Ed. 467]) on the authority of *American Mfg. Co.* v. *St. Louis,* 250 U.S. 459 [39 S.Ct. 522, 63 L.Ed. 1084], and *Department of Treasury* v. *Ingram-Richardson Mfg. Co., supra.*

In *State Board of Equalization* v. *Blind Bull Coal Co.,* 55 Wyo. 438 [101 P.2d 70], decided April 16, 1940, the Retail Sales Tax Act of Wyoming was involved. Defendant sold coal at its mine in Wyoming, said coal being taken from the mine in trucks by the purchasers and transported into Idaho whence they came for the sole purpose of buying the coal and with the intention of transporting it into Idaho. The imposition of the retail sales tax upon these transactions was held not to constitute a burden on interstate commerce. The Supreme Court of Wyoming in its opinion referred to the previous opinion of this court in the instant case, saying that it was probably influenced by *A. G. Spalding & Bros.* v. *Edwards,* 262 U.S. 66 [43 S.Ct. 485, 67 L.Ed. 865]. But the Superior Oil case, *supra,* and *Sonneborn Bros.* v. *Keeling,* 262 U.S. 506, 520 [43 S.Ct. 643, 67 L.Ed. 1095], were cited, and reference was made to the distinction pointed out in the latter case between local taxation of imports from one state to another and imports from abroad; also it was said that recent cases from *Wiloil Corp.* v. *Pennsylvania,* 294 U.S. 169 [55 S.Ct. 358, 79 L.Ed. 838], to *McGoldrick* v. *Berwind-White etc. Co., supra,* do not presage any extension of immunity under the commerce clause.

As to *A. G. Spalding & Bros.* v. *Edwards, supra,* the tax involved was one imposed by a federal statute, and article I, section 9, of the United States Constitution prohibiting the imposition by Congress of any tax on articles exported from any state to a foreign country was involved, and not the commerce clause of the Constitution.

In the case before us we believe that the sale of the fuel oil by Standard to the Southern Pacific Company was a transaction begun and completed within the State of California (*Whitaker* v. *Dunlap-Morgan Co.*, 44 Cal.App. 140 [186 P. 181]), and was purely an intrastate transaction subject to the provisions of the Retail Sales Tax Act. It is to be noted that orders were given in California and that the contract provided for delivery at points in the state; that terms were f.o.b. Tracy or El Segundo; that payments were made within the state; that the contract also provided that oil should be accepted or rejected by the railroad at the time of tender of delivery unless inspection was waived by failure to have a representative present at the time, such inspection to be made at the time of delivery from Standard's pipe line, storage tank, or tank cars. Also the contract provided that the tank cars required by the railroad for "receipt of deliveries by the Oil Company" should be furnished by the railroad; and Standard paid no freight. The only interstate phase of the case is that after delivery to the buyer it transported the oil out of the state. Furthermore, we believe that the imposition of the tax neither discriminates against nor imposes any burden upon interstate commerce; that, on the contrary, if the sales tax were not imposed upon the transaction in question a discrimination against intrastate commerce would result. (*Western Lithograph Co.* v. *State Board of Equalization,* 11 Cal.2d 156 [78 P.2d 731, 117 A.L.R. 838].) No question of multiple taxation is involved.

The former opinion in this case was largely based upon the decision in *A. G. Spalding & Bros.* v. *Edwards, supra,* and on the supposition that because interstate commerce was involved, the California sales tax could not be imposed. However, since the more recent decisions above cited indicate that the transactions here under consideration are to be viewed as intrastate rather than interstate, that state forms of taxation that do not discriminate against interstate commerce nor place an undue burden upon it as compared with intrastate commerce, do not contravene the commerce clause, and that the decision in *A. G. Spalding & Bros.* v. *Edwards* is distinguishable, we are of the view that in considering the case upon the facts now before us and the decisions cited herein we should not be precluded by such former opinion,

but should uphold the imposition of the sales tax upon the sales in controversy.

The judgment is reversed.

Schottky, J. pro tem., concurred.

Thompson, J., deeming himself disqualified, did not participate in the decision.