EXCEL, INC., v. IVEY L. CLAYTON, ACTING COMMISSIONER OF REVENUE, STATE OF NORTH CAROLINA.

(Filed 20 January, 1967.)

1. **Constitutional Law § 27;    Taxation § 29—**

    A sales tax on an interstate transaction is a burden on interstate commerce prohibited by the Commerce Clause of the Federal Constitution, but a tax on a sale completed in this State does not constitute a burden on interstate commerce merely because the buyer and the seller intend the goods sold should be used outside the State.

2. **Same——   Where purchaser of goods in this State for out of state use is a carrier, it may not assert it occupied dual roles of carrier and purchaser.**

    Sale of goods to interstate carriers for use by the carriers at terminals outside this State are intrastate transactions subject to the North Carolina sales tax when the goods are delivered to the carriers at the seller's

plant in this State notwithstanding the carriers take the goods f.o.b. the seller's plant under bills of lading with themselves as consignees at the respective terminals, without transportation charges, and inspection of the goods is had at, and payment is forwarded from, such foreign terminals. The imposition of such tax does not offend the Commerce Clause of the Federal Constitution and is not precluded by sales tax regulation No. 23.

APPEAL by plaintiff from *Anglin, J.,* January 1966 Civil Session of LINCOLN.

Civil action, by virtue of G.S. 105-267, against the Acting State Commissioner of Revenue to recover a payment of sales tax in the amount of $1,769.02, with $216.71 in interest and a penalty of $176.90, paid under protest.

The parties waived a trial by jury and submitted the case to Judge Anglin to decide upon stipulated and agreed facts, which are summarized as follows, except when quoted:

Excel, Inc., is a North Carolina corporation, with its offices and principal place of business in Lincolnton, North Carolina, and in the ordinary course of its business it manufactures textile handling equipment, four-wheel push carts, and other materials in its plant in Lincolnton, which it sells to customers both within and without the State of North Carolina. Ivey L. Clayton is the Acting Commissioner of Revenue of the State of North Carolina.

Between 1 March 1961 and 31 October 1963, Excel made sales of four-wheel push carts and other equipment totaling $58,967.34 to Huckabee Transport Corporation (hereafter called Huckabee), Carolina-Norfolk Truck Lines, Inc. (hereafter called Carolina-Norfolk), and McLean Trucking Company (hereafter called McLean), each of which is a licensed common carrier of freight, for use by the purchasing carriers at their out-of-State trucking terminals. Each of the purchasers has interstate operating rights as a common carrier of freight.

Huckabee is a South Carolina corporation, with its principal offices in Columbia, South Carolina. It is a carrier of interstate commerce, but it does not possess any rights from the Interstate Commerce Commission to transport as a common carrier commodities of any kind from Lincolnton, North Carolina, to Columbia, South Carolina. The total amount of Excel's sales to Huckabee are represented by twelve invoices amounting to $8,259.84. All sales to Huckabee covered by the twelve invoices were made in response to orders placed by Huckabee from its offices in Columbia, South Carolina. Payments for the merchandise were likewise transmitted from Huckabee's offices in Columbia, South Carolina, to the plaintiff in Lincolnton, North Carolina. Such sales were f.o.b. Lincolnton, North Carolina, and the delivery of the merchandise to Huckabee was ac-

companied by waybills indicating the destination as Columbia, South Carolina, and that the property was to be transported without charge.

Carolina-Norfolk is a Virginia corporation with its principal offices in Norfolk, Virginia. It is an interstate common carrier of freight, but it possesses no operating rights from the Interstate Commerce Commission to transport as a common carrier general commodities from Lincolnton, North Carolina, to Norfolk, Virginia. Its operating rights for shipments originating in North Carolina are limited to the transportation of empty containers and petroleum products. None of the merchandise purchased by Carolina-Norfolk from plaintiff consisted of empty containers or petroleum products. Excel's sales to Carolina-Norfolk are represented by three invoices, and the total sales were $5,000. All sales by Excel to Carolina-Norfolk were made in response to orders placed by Carolina-Norfolk from its offices in Norfolk, Virginia. Payments for all merchandise were submitted by Carolina-Norfolk from its offices in Norfolk, Virginia, to Excel at Lincolnton, North Carolina. Sales were f.o.b. Lincolnton, North Carolina, and the delivery of the merchandise to Carolina-Norfolk was accompanied by waybills indicating the destination as Norfolk, Virginia, and that the property was to be transported without charge.

McLean is a North Carolina corporation with its principal offices in Winston-Salem, North Carolina. It is an interstate common carrier of freight, and possesses operating rights from the Interstate Commerce Commission to transport general commodities to all cities listed as destinations on its invoices for sales to McLean. Plaintiff's sales to McLean represented by twenty-five invoices amounted to $45,707.50. The destinations of all purchases made by McLean were cities in states other than North Carolina in which McLean had terminals. Payments to Excel for all merchandise were transmitted from McLean's offices in Winston-Salem to plaintiff in Lincolnton, North Carolina. Such sales to McLean were f.o.b. Lincolnton, North Carolina, and the delivery of the merchandise to McLean was accompanied by waybills indicating the various destinations shown on the invoices.

All merchandise represented by the sales to Huckabee, Carolina-Norfolk, and McLean was packaged and crated by Excel prior to delivery to the purchasers and was not thereafter unpackaged or uncrated or inspected until it reached the out-of-State destination shown on the invoices. Payments for such merchandise were forwarded by purchasers to Excel after the receipt of the merchandise and inspection at out-of-State destinations. At the time that all the merchandise purchased from Excel was delivered, it was intended to

be used by the purchasers outside of North Carolina, and was so used.

Excel is registered with the Sales and Use Tax Division of the North Carolina Department of Revenue, and reports and pays its sales tax to the Commissioner of Revenue monthly. It did not report or remit any sales tax to the State on the purchases made by Huckabee, Carolina-Norfolk, and McLean, as set forth in the instant case.

Following an audit of Excel's books and records in December, 1963, the defendant Commissioner located sales totaling $58,967.34 to Huckabee, Carolina-Norfolk, and McLean, on which the North Carolina 3% sales tax had not been paid. Assessment was thereafter made by the defendant Commissioner against plaintiff in the amount of $2,162.63, such sum representing $1,769.02 in tax, $216.71 in interest, and $176.90 in penalty.

Excel, in apt time, on 28 January 1964, objected to this assessment, charging that the assessment was based on sales which were exempt from the North Carolina sales tax under G.S. 105-164.13(17) as sales in interstate commerce. On 7 May 1964 a hearing was held in the office of the defendant Commissioner in Raleigh on objections entered by Excel to the assessment of the sales tax in the instant case, which contentions defendant Commissioner rejected.

On 14 August 1964 Excel paid to the defendant Commissioner under protest the sum of $2,162.63, such sum representing the assessment of $1,769.02 in tax, $216.71 in interest, and $176.90 in penalty. On 2 June 1965 Excel commenced this action to recover the tax, interest, and penalty on the sales here.

> "18. If the Court should conclude that all of the sales in issue were made outside of North Carolina, the plaintiff would be entitled to recover of the defendant $2,162.63 plus interest at six percent from August 14, 1964, until paid.
>
> "If the Court should conclude that the sales to Carolina-Norfolk Truck Line, Inc., and Huckabee Transport Corporation were made in North Carolina but that sales to McLean Trucking Company were made outside of North Carolina, the plaintiff would be entitled to recover of the defendant $1,676.32 plus interest at six percent from August 14, 1964, until paid.
>
> "If the Court should conclude that all sales in issue were made in North Carolina, the plaintiff should not be allowed any recovery."

The judge entered judgment in which, after reciting the stipulated and agreed facts in full, he concluded as a matter of law that all sales in controversy made by Excel to Huckabee, Carolina-Nor-

folk, and McLean were sales made in North Carolina and as such were properly includable in the plaintiff's net taxable sales for sales tax purposes under the North Carolina law. Whereupon, he adjudged and decreed that plaintiff take nothing by its action, and that defendant recover of plaintiff the costs of this action.

From this judgment, plaintiff appeals to the Supreme Court.

*Jonas & Jonas by Harvey A. Jonas, Jr., and Don M. Pendleton for plaintiff appellant.*

*Attorney General T. W. Bruton and Assistant Attorney General Charles D. Barham, Jr., for defendant appellee.*

PARKER, C.J. Excel manufactures textile handling equipment and other tangible property at its plant in Lincolnton, North Carolina, for sale as a retailer both in North Carolina and outside of the State. A sales tax is a tax on the freedom of purchase, and, when applied to interstate transactions, is a tax on the privilege of doing interstate commerce, creates a burden on interstate commerce and runs counter to the commerce clause of the Federal Constitution. *McLeod v. Dilworth Co.*, 322 U.S. 327, 88 L. Ed. 1304; *Johnston v. Gill, Comr. of Revenue*, 224 N.C. 638, 32 S.E. 2d 30.

Incidental interstate attributes do not, however, transform purely local transactions into interstate transactions and thereby create a burden on interstate commerce, and run counter to the commerce clause of the Federal Constitution. *Department of the Treasury of the State of Indiana v. Wood Preserving Corp.*, 313 U.S. 62, 85 L. Ed. 1188; *International Harvester Co. v. Department of the Treasury*, 322 U.S. 340, 88 L. Ed. 1313.

The mere intention of the buyer and the seller that the goods sold be used outside of the state does not make the sales transaction any less a local intrastate activity. Where the delivery of the goods sold is in the taxing state and is accepted within the taxing state, a sales tax may lawfully be imposed upon the transaction. *Superior Oil Co. v. State of Mississippi ex rel. Knox*, 280 U.S. 390, 74 L. Ed. 504; *Department of the Treasury of the State of Indiana v. Wood Preserving Corporation, supra; International Harvester Co. v. Department of the Treasury, supra; State Tax Commission of Utah v. Pacific States Cast Iron Pipe Co.*, 372 U.S. 605, 10 L. Ed. 2d 8; *Phillips v. Shaw, Comr. of Revenue*, 238 N.C. 518, 78 S.E. 2d 314; *Superior Coal Co. v. Department of Revenue*, 4 Ill. 2d 459, 123 N.E. 2d 713; *Pressed Steel Car Co. v. Lyons*, 7 Ill. 2d 95, 129 N.E. 2d 765; *Rite Tile Co. v. State*, 278 Ala. 100, 176 So. 2d 31.

Plaintiff states in its brief: "Plaintiff concedes that if purchasers

had not been franchised interstate commerce carriers who delivered the merchandise out of the state under bill of lading, the sales would be taxable." It seems that plaintiff's basic contention is this: Huckabee, Carolina-Norfolk, and McLean took custody of the property which each purchased in the capacity of a common carrier and that possession and control over the property was deferred by them until it delivered the property to itself as a purchaser outside of the State. Inherent in this contention is the assertion that the purchasing motor carrier has a dual personality when it carries property consigned to itself so that its role as carrier is divorced from its role as purchaser. This concept, while a novel proposition with us, has been passed upon and rejected in a series of cases in Illinois and California. *Superior Coal Co. v. Department of Finance,* 377 Ill. 282, 36 N.E. 2d 354; *Moffat Coal Co. v. Daley,* 405 Ill. 14, 89 N.E. 2d 892; *Superior Coal Co. v. Department of Revenue, supra; Pressed Steel Car Co. v. Lyons, supra; Standard Oil Co. of California v. Johnson,* 33 Cal. App. 2d 430, 92 P. 2d 470; *Id.* 56 Cal. App. 2d 411, 132 P. 2d 910; *Id.* 135 P. 2d 638; *Id.* 24 Cal. 2d 40, 147 P. 2d 577.

In *Pressed Steel Car Co. v. Lyons, supra,* the Court held that where railroads purchase goods in Illinois which are shipped by the seller under uniform straight bills of lading from its Illinois plant to the purchasing railroad at a destination outside of Illinois, but in each instance the purchasing railroad receives the goods in Illinois as carrier, the transaction is an intrastate sale and is subject to the Illinois retailers' occupation tax, as the reality of the situation must be recognized, and the carrier hauling its own goods does so as a purchaser and not as an agent of the seller. In its opinion the Court said:

> "The argument against the tax is based upon the commerce clause of the Federal constitution, and stresses the intention of the seller and the purchaser that the goods sold should be shipped to a destination outside of Illinois, and the fact that the goods were actually so shipped. It appears to be settled, however, that a transaction by which a purchaser buys goods which are delivered to him within the taxing State may properly measure a tax, even though both parties know that the goods are purchased for use outside of the State, and they are so used. [Citing voluminous authority.]
>
>         *          *          *
>
> "Inherent in this contention is an assertion that the purchasing railroad has a dual personality when it carries goods consigned to itself so that its role as carrier is divorced from its role as purchaser.

\* \* \*

". . . In the absence of congressional action, we do not find in the language of the commerce clause or in any authoritative decision a requirement that a State must recognize for taxing purposes a dual personality on the part of railroads which are carriers of goods they have purchased."

The United States Supreme Court in the case of *Department of the Treasury of the State of Indiana v. Wood Preserving Corp., supra,* had this to say, which is pertinent to the contention that a bill of lading requiring delivery to out-of-state destination indicated that a railroad was a carrier but not a purchaser:

"These were local transactions, — sales and deliveries of particular ties by respondent to the Railroad Company in Indiana. The transactions were none the less intrastate activities because the ties thus sold and delivered were forthwith loaded on the railroad cars to go to Ohio for treatment. The contract providing for that treatment called for the treatment of ties to be delivered by the Railroad Company at the Ohio plant, and the ties bought by the Railroad Company in Indiana, as above stated, were transported and delivered by the Railroad Company to that treatment plant. Respondent did not pay the freight for that transportation and the circumstance that the billing was in its name as consignor is not of consequence. in the light of the facts showing the completed delivery to the Railroad Company in Indiana."

The only decision which lends any possible credence to Excel's view that common carriers purchasing for their own use have a dual personality is *In re Globe Varnish Co.,* 114 F. 2d 916, cert. den. 312 U.S. 690, 85 L. Ed. 1126. The subsequent decision of the United States Supreme Court in *Department of the Treasury of the State of Indiana v. Wood Preserving Corp., supra,* casts considerable doubt upon the soundness of the result reached in *Globe Varnish.* The *Wood Preserving Corporation* case, 7 Cir., 114 F. 2d 922, was a companion case to *In re Globe Varnish Co.* in the Circuit Court of Appeals. Similar facts were resolved by that court in similar fashion in the two cases. Subsequently, review by the United States Supreme Court was sought in both cases. A unanimous court reversed the judgment in the *Wood Preserving Corporation* case. *Certiorari* was denied in the *Globe Varnish* case on a procedural ground. 312 U.S. 690, 85 L. Ed. 1126. (For an excellent analysis of the effect of *Wood Preserving Corporation* decision upon the holding in *In re Globe Varnish Co., supra,* see *Pressed Steel Car Co. v. Lyons, supra,* at pages 769-

770.) Following the *Wood Preserving Corporation* decision, the California Court on two separate occasions repudiated one of its earlier decisions based upon the *Globe Varnish Company* case; *Standard Oil Co. of California v. Johnson*, 56 Cal. App. 2d 411, 132 P. 2d 911; *Id.* 135 P. 2d 638. In the latter decision the Court said: "The mere use of a standard bill of lading and a designation of respondent as consignor should not be allowed to change what is essentially an intrastate transaction into an interstate transaction." 135 P. 2d, at page 642.

Plaintiff further contends that the defendant should be bound by the terms of Regulation 23 which it promulgated, that plaintiff has complied with the direct terms of that regulation, and that the transactions here are exempt from North Carolina sales tax on the basis of that regulation. This contention is untenable. This regulation merely recognizes that where a seller is required to deliver the property out of the State to the purchaser in order to complete the sale, the transaction is considered an interstate sale and exempt from the North Carolina sales tax.

In this case, Huckabee, Carolina-Norfolk, and McLean each purchased push carts and other material from Excel in the State of North Carolina, each received complete delivery of the push carts and other material within the State of North Carolina, and each of them loaded the push carts and other material on their trucks in North Carolina and transported the push carts and other material in their trucks out of the State of North Carolina to the places designated by the waybills. Sales were f.o.b. Lincolnton. The sales, according to the stipulated and agreed facts, were essentially intrastate transactions and not interstate transactions, and we find no ground for holding that in imposing a sales tax upon the receipts from these local transactions North Carolina has exceeded its constitutional authority by taxing interstate commerce or discriminating against it.

The unconditional commitment of property to a common carrier for transportation in regular course to another state or country is generally held to place it in the stream of interstate or foreign commerce, so as to render it immune from local taxation. Annot., 11 A.L.R. 2d 944. That principle of law is not applicable here for the reason that the push carts and other material were delivered to Huckabee, Carolina-Norfolk, and McLean in North Carolina, the taxing jurisdiction. 47 Am. Jur., Sales and Use Taxes, § 10, pp. 210-11; Annot., 128 A.L.R. 900.

The judgment below is

Affirmed.