[Civ. No. 21556. Third Dist. June 20, 1983.]

SATCO, INC., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

**COUNSEL**

George Deukmejian and John K. Van de Kamp, Attorneys General, Edward P. Hollingshead and Derry L. Knight, Deputy Attorneys General, for Defendant and Appellant.

**14**

Tuttle & Taylor, Joseph R. Austin and William C. Schweinfurth for Plaintiff and Respondent.

Jones, Day, Reavis & Pogue, R. George Crawford and Glenn L. Madere as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BLEASE, J.**—In this case we consider the scope of exemption from the sales tax provided by Revenue and Taxation Code section 6385.[1] Satco, Inc., filed this action for refund of $47,636.35 it paid when the Board of Equalization (Board) rejected its claim of exemption. (See § 6933.) The Board appeals from the judgment which determined Satco entitled to the exemption. We will reverse the judgment.

The dispositive question is: is the sale of goods to a common carrier, to be used out-of-state, pursuant to a contract providing for delivery in California, subject to the sales tax? We conclude such a transaction is taxable.

### PRELIMINARY FACTS

Satco manufactures and sells aircraft freight shipping equipment such as cargo containers, pallets, and nets. In 1973 and 1974 Satco made several contracts with Flying Tiger Lines, Inc., a common carrier of air freight with shipping stations at airports within and without California, to provide such equipment. Pursuant to these contracts, when Satco was prepared to deliver a unit of equipment it telephoned Flying Tiger for instructions and was informed which Flying Tiger station was to receive the unit.

Airbills were made out for each unit of equipment delivered.[2] Most were prepared by Satco employees on printed forms supplied by Flying Tiger; the rest were prepared by Flying Tiger personnel. In each transaction in dispute the airbill lists the terminal manager of an out-of-state Flying Tiger station as consignee and the terminal manager of Flying Tiger's Los Angeles station as the shipper.

Satco dispatched all of the units from its facility in El Segundo to Flying Tiger's Los Angeles station. There Flying Tiger's personnel sometimes rejected the goods on grounds they were incomplete or did not meet contract

---

[1]Unless otherwise specified, all references are to the Revenue and Taxation Code.

[2]An airbill is a bill of lading for air transportation of goods. (See Cal. U. Com. Code, § 1201, subd. (6).)

specifications. The equipment was ultimately shipped to one of Flying Tiger's out-of-state stations, where it was used in its business as a common carrier. None of the equipment was put to use in California until after transportation out-of-state.

DISCUSSION

I

■ The board contends the transactions are taxable because the sales were completed in California and section 6385 does not exempt such transactions from the sales tax.

Section 6385[3] measures transactions exempted from the sales tax by two criteria. First, the property must be "shipped by the seller via the purchasing carrier under a bill of lading . . . to a point outside [the] State . . . ." Second, "the property [must be] actually transported to the out-of-state destination for use by the carrier . . . ."[4] These provisions are amplified by section 1621 of title 18 of the California Administrative Code[5] which requires the bill of lading show the seller as consignor and show the goods are consigned to the carrier at an out-of-state designation.

---

[3]The statute provides in pertinent part: "There are exempted from the computation of the amount of the sales tax the gross receipts from sales of tangible personal property to a common carrier, shipped by the seller via the purchasing carrier under a bill of lading whether the freight is paid in advance, or the shipment is made freight charges collect, to a point outside this State and the property is actually transported to the out-of-state destination for use by the carrier in the conduct of its business as a common carrier."

[4]Satco lays great emphasis upon the undisputed fact the goods it sold fulfilled this latter requirement. But, as section 6385 makes plain, such a fact is not dispositive.

[5]During the time of these disputed transactions the regulation provided in pertinent part:
"(1) Bill of Lading. Any seller claiming a transaction as exempt from sales tax under section 6385 must receive at the time of the transaction, and retain, a properly executed bill of lading, or copy thereof, pursuant to which the goods are shipped. The bill of lading must show the seller as consignor. It must indicate that the described goods are consigned to the common carrier at a specified destination outside this state. Where the form of the transaction is 'freight collect,' no specific freight charge need be shown on the bill of lading, inasmuch as such charges are not ordinarily shown thereon in 'freight collect' transactions. Furthermore, the carrier need not actually collect freight charges from itself. The form and language of the bill of lading should be similar to the form and language normally used where the purchaser and carrier are not the same.
"(2) Supporting Certificate. In addition to a bill of lading, the seller must obtain from the purchaser at the time of the transaction, and retain, a certificate conforming in substance with one of the following, appearing in the appendix to this regulation: [enumerated certificates omitted.]
"(3) Effect of Exemption Documents. Copies of the bill of lading and supporting certificate, accepted in good faith, constitute prima facie evidence of the facts entitling the seller to the exemption.
"Unless both of these documents are received and retained, the seller is liable for sales tax on the transaction." (Cal. Admin. Code, tit. 18, § 1621, Cal. Admin. Register 69, No. 45.)
The current provision is substantially identical. (Cal. Admin. Code, tit. 18, § 1621, Cal. Admin. Register 80, No. 5.)

We read section 6385 against a background of federal constitutional law. (See *Young Life Campaign* v. *Patino* (1981) 122 Cal.App.3d 559, 568, fn. 7 [176 Cal.Rptr. 23].) ■ The interstate commerce clause of the Constitution of the United States, article I, section 8 restricts the taxation of sales of goods in interstate commerce. (See *Standard Oil Co.* v. *Johnson* (1942) 56 Cal.App.2d 411 [132 P.2d 910]; hereafter *Standard Oil I*; Tribe, American Constitutional Law (1978) §§ 6-14.) "A state may require a local seller to collect and remit a tax on receipts from *sales made to out-of-state customers* only if the sale itself can be sufficiently connected with the taxing state. *Delivery within the taxing state* can establish such a nexus." (Tribe, American Constitutional Law, *supra*, §§ 6-15, p. 348.) If delivery occurs in California the transaction constitutionally may be taxed, regardless of any intent to subsequently ship the goods out of state. (See *Standard Oil Co.* v. *Johnson* (1944) 24 Cal.2d 40 [147 P.2d 577], hereafter *Standard Oil II*;[6] *Garrett Corp.* v. *State Board of Equal.* (1961) 189 Cal.App.2d 504, 511 [11 Cal.Rptr. 421]; cf. *Standard Oil I, supra.*) Section 6385 was enacted in 1943 shortly after the decision in *Standard Oil I, supra.* (Stats. 1943, ch. 699, § 6.3, p. 2457.) It was soon interpreted as establishing the tax exempt line along borders defined by the commerce clause.

■ The purpose of section 6385 is to place interstate common carriers on an equal constitutional footing with other out-of-state purchasers. (*Standard Oil, II, supra,* 24 Cal.2d at pp. 40, 48-49.) Retail sales are subject to

---

[6]In *Standard Oil II*, the seller sold fuel oil to Southern Pacific Railroad for use by the railroad in other states. The parties contracted for delivery outside California. (*Standard Oil II, supra,* 24 Cal.2d at pp. 42-43, 47.) The Supreme Court held the transaction exempt and, in support of its determination, cited the newly minted section 6385. It plainly implied its view the purpose of section 6385 is to establish the tax exempt line along the case law boundaries of the commerce clause. The court observed: "That the transactions were not subject to the tax is further indicated by the 1943 amendment to the Revenue and Taxation Code which added section 6385 specifically exempting all sales *of this type.* (Stats. 1943, p. 2457.) The section provides: 'There are exempted from the computation of the amount of the sales tax the gross receipts from sales of tangible personal property to a common carrier, shipped by the seller via the purchasing carrier under a bill of lading whether the freight is paid in advance, or the shipment is made freight charges collect, to a point outside this State and the property is actually transported to the out-of-state destination for use by the carrier in the conduct of its business as a common carrier.' That this court may consider the 1943 amendment in determining the scope of the tax statute at the time of the transactions here involved is indicated by *Union League Club* v. *Johnson,* 18 Cal.2d 275, 278-279 [115 P.2d 425]. It was there held that in view of an amendment to the Retail Sales Tax Act at a time when certain groups were resisting collection of taxes assessed against them, the court could infer a legislative intent to clarify rather than to change existing law. (See also, *San Joaquin Ginning Co.* v. *McColgan,* 20 Cal.2d 254, 264 [125 P.2d 36]; *Martin* v. *California Mut. B. & L. Assn.,* 18 Cal.2d 478, 484 [116 P.2d 71].) Similarly, the 1943 amendment was made while the instant case was pending upon appeal and after the decision in *Standard Oil [I],* which held that the sales tax act applied to sales of oil to a carrier for use outside the state but delivered f.o.b. tank cars of the carrier in California." (Italics added.) (*Standard Oil II, supra,* 24 Cal.2d at pp. 48-49.)

the sales tax if delivery occurs in California (§ 6007). Section 6385 exempts a sales transaction from the California sales tax if the delivery of goods to the carrier takes place out-of-state, even though the carrier takes possession of the goods in the state to transport them out-of-state. (*Standard Oil II, supra.*)

The need for a special rule dealing with common carriers arises because of their dual capacities as purchasers and carriers of goods. In the noncarrier case, the purchaser normally receives the goods at an out-of-state destination. A common carrier, however, may act as both the transporter and the receiver of the goods. If an interstate common carrier purchases goods for its out-of-state use, an ambiguity concerning the place of delivery arises when it takes possession of the goods in California. (See *Standard Oil II, supra,* 24 Cal.2d at pp. 50-52 (dis. opn. of Carter, J.).) If possession is taken as a buyer, rather than as carrier, delivery takes place in California and the commerce clause does not apply.

This problem is resolved by section 6385. It requires not only that the goods actually be shipped out of state, but that they "[be] shipped *by the seller* via the purchasing carrier *under a bill of lading* . . . to a point outside [the] State." This makes the place of delivery the measure of taxability. ▪ Delivery is a term of art in the law of sales denoting the point at which *ownership* is transferred.[7] At delivery the goods are no longer the property of the seller, but that of the buyer.[8]

▪ Shipment by the seller under a bill of lading to a consignee out-of-state insures delivery takes place outside of California. Interstate shipment by bill of lading is governed by federal law. (49 U.S.C. § 81 et seq.) The consignor of goods under an interstate bill of lading is presumptively the owner of the goods. (See *Estherville Produce Co.* v. *Chicago, R.I. & P.R. Co.* (8th Cir. 1932) 57 F.2d 50, 52.) The requirement the seller be the

---

[7]Delivery is *not* synonymous with *passage of title* to the goods although the two may occur simultaneously. (See Cal. U. Com. Code, § 2401; see also 1 Cal. Commercial Law (Cont.Ed.Bar 1966) § 8.2 [for comparison with pre-Commercial Code law].) On this basis, we distinguish the result here from that in *H-R Truck etc. Co.* v. *State Bd. of Equal.* (1958) 166 Cal.App.2d 378 [333 P.2d 151] which held a transaction exempted under section 6385 though title and possession passed to the carrier in California. The court did not discuss the question of delivery under the law of sales and the facts are unilluminating concerning the delivery terms of the parties' contract. (*Id.,* at pp. 380-381.)

[8]If the contract entails shipment of the goods it may provide for the tender of delivery at the point the goods are placed in the possession of a common carrier, a shipment contract, or at the point the carrier has transported them to a destination contract. (See 1 Cal. Commercial Law, *supra,* § 8.2.) In a shipment contract the risk of loss of the goods passes to the buyer when they are relinquished to the carrier. In a destination contract the risk of loss remains with the seller while they are in possession of the carrier. (See Cal. U. Com. Code, § 2509; see also 1 Cal. Commercial Law, *supra,* §§ 10.34-10.37.)

shipper under a bill of lading assists in restricting the exemption to goods which are shipped out-of-state *as the property of the seller* (compare *Standard Oil I, supra,* 56 Cal.App.2d at p. 413, shipment under " 'way bill for company freight' " "contract provided for delivery at points in the state" [*id.,* at p. 424]—taxable, with *Standard Oil II, supra,* 24 Cal.2d 40, 43, shipment under "the usual standard commercial railroad bills of lading issued to [seller]" [goods tendered to the carrier] "*as property of the shipper.*" (*Id.,* at p. 46—not taxable.)

The administrative regulation (see fn. 5, *ante*), in requiring that the bill of lading show the seller as shipper and show "the described goods are consigned to the common carrier at a specified destination outside this state," procedurally implements the function of the bill of lading in fixing the point of delivery.[9]

## II

Since the place of delivery is dispositive of the claim of exemption we look to the record to determine where delivery occurred. The trial court made no finding concerning delivery. However, the evidence is uncontested. The case was submitted upon an agreed statement of facts and documents containing essentially uncontradicted matter. The question of delivery is therefore appropriate for resolution on appeal. (See, e.g., *Western Contracting Corp.* v. *State Board of Equalization* (1968) 265 Cal.App.2d 568, 575 [71 Cal.Rptr. 472].)

We first note the airbills list Flying Tiger as the shipper, not Satco. This conflicts with section 6385 which requires that the "*seller*" ship the goods "to a point outside [the] state" and the augmenting regulation (see fn. 5, *ante*) which requires that the bill of lading show the seller as consignor.[10] It also is evidence of Flying Tiger's ownership of the goods at the time of shipment in California. (See *Estherville Produce Co., supra,* 57 F.2d at p. 42.)

The contract documents also use terms indicative of delivery in California. They include five purchase orders from Flying Tiger. Three provide

---

[9]This disposes of Satco's attack upon the validity of the regulation.

[10]Contrary to Satco's claim, this is not an arguable case of substantial compliance with the requirements of section 6385 or the board's regulation, section 1621. "Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute. But when there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression by the seller, or such minima as obvious typographical errors, should not be given the stature of noncompliance . . . ." (*Stasher* v. *Herger-Haldeman* (1962) 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649].) In this case there is no *actual* compliance either with section 6385 or the Board's implementing regulation.

shipping instructions: "Ship via your truck" and "FOB F.T.L." The fourth provides: "Ship via your truck," without designation of an F.O.B. term. The fifth purchase order provides: "Ship via your delivery" and "F.O.B. Shipping Point." The documents also include specimen shipping order forms and invoices prepared·by Satco for shipments of units of equipment. Each provides: "Ship to Flying Tiger Line, Inc., 7401 World Way West, Los Angeles International Airport, Los Angeles California 90009" and "Via our truck FOB El Segundo, Calif." F.O.B. is a delivery term (Cal. U. Com. Code, §§ 2319, 2509). It here designates Flying Tiger stations in California as the delivery point. Similarly, the term "ship to Flying Tiger line" etc. implies the same delivery point.

Flying Tiger also inspected the goods at its California terminal. The parties stipulated that "[Flying Tiger's] Los Angeles Station occasionally rejected goods delivered by Satco which it found to be incomplete and not meeting the required specifications." The specimen documents pertaining to goods rejected on inspection bear notations such as "To be returned for rework rivets & hat section." This is not the kind of inspection performed by a common carrier (see Cal. U. Com. Code, § 7301) but rather that of a purchaser inspecting goods for acceptance at delivery (see Cal. U. Com. Code, § 2507; see also *Standard Oil I, supra,* 56 Cal.App.2d at p. 424).

In view of these substantial and uncontradicted indicia of delivery, we conclude delivery took place in California.[11]

The judgment is reversed and remanded with instructions to enter judgment for defendant Board.

Puglia, P. J., and Ransom, J.,* concurred.

---

[11]In view of our conclusion, the remaining arguments of the parties do not require discussion.

*Assigned by the Chairperson of the Judicial Council.